S. W. DOWNS, The (STEVENS v.). See Case No. 13,411.

---

## Case No. 13,683.

### In re SWEARINGER et al.

[5 Sawy. 52;[1] 17 N. B. R. 138.]

District Court, D. Nevada. Dec. 13, 1877.

HOMESTEAD—CONSTRUCTION—TENANTS IN COMMON —NEVADA.

1. The first section of the Nevada homestead act is a literal copy of the first section of the California homestead act of 1860 [Laws 1860, 311,] which, when copied, had been so construed as to deny the right of homestead exemption to a tenant in common in the common property, but the constitutions of the two states in regard to such exemptions are different: Held, the language of the law being free from ambiguity, and the intention of the legislature and the framers of the constitution of Nevada plain, that in construing the law of Nevada the court was not bound to adopt the construction of the courts of California.

[Cited in Commercial & Sav. Bank v. Corbett, Case No. 3,058.]

2. The interest of a tenant in common in the dwelling-house and land actually occupied by him as a homestead, not exceeding five thousand dollars in value, is by the constitution and law of Nevada exempt from forced sale.

[3. Cited in Re McKenna, 9 Fed. 29, to the point that a petition, and not a plenary suit or action, is the proper remedy for the assignee who seeks to gain possession of property claimed to be improperly withheld from him.]

This is a proceeding by the assignee of the bankrupts to compel Swearinger to surrender possession of certain premises, which the latter claims as a homestead. At the time Swearinger and Lamar were adjudicated bankrupts, in January, 1877, they were partners in the business of ranching, and tenants in common of the premises now in question. For about two years before, the respondent Swearinger had been residing with his family on these premises, having no other home. In October, 1876, with the consent of Lamar, Swearinger filed and recorded a declaration of homestead, embracing the whole premises, and it was understood that if Swearinger held the whole as a homestead he should give Lamar something for his share. The respondent, in his answer, now claims to hold as his homestead, one hundred and twenty acres of the whole tract, and offers to give the assignee possession of the rest.

C. H. Belknap, for assignee.

J. H. Windle and S. D. King, opposed.

HILLYER, District Judge. The contention in this case is as to the true construction of the first section of the law of Nevada, commonly called the homestead act. Under that section, can a homestead be ex-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

empted from forced sale when the dwelling-house and land claimed are owned and possessed by the debtor as a tenant in common with another?

At the outset, counsel for the assignee invokes a well-known rule of construction, which, he claims, is decisive. The first section of the Nevada homestead act (1 Comp. Laws, 60), is an exact copy of the first section of the California act of 1860. The courts of California have, from the first decision in 1855, held that no homestead could be carved out of a tenancy in common, and counsel insists that this construction was adopted when the section was copied. The thing to be ascertained is the intention of the legislature of Nevada, "but this intention is to be searched for in the words which the legislature has employed to convey it." [The Paulina v. U. S.] 7 Cranch [11 U. S.] 52. Before rules of construction are invoked, there must be something to construe. If the words used express clearly the sense and intention of the law they must always govern. For it is not permitted to interpret what is plain and manifest, as it stands in no need of interpretation. Smith's Comp. § 545. It would be hard to find language freer from uncertainty or ambiguity than that of the law now under consideration to express the undoubted intention of the law-givers to protect the home of a family from forced sale. "The homestead consisting of a quantity of land, together with the dwelling-house thereon, shall not be subject to forced sale," etc. These are the words. To my mind they present a sense too obvious to admit of more than one interpretation, and there is no occasion to go further and inquire how they may have been restrained in their meaning by the courts of another state. Were this otherwise, the constitution of Nevada is so much more explicit than that of California, in the section providing for a homestead exemption, that it must receive great consideration in construing any law passed in pursuance of its provisions. Const. Nev. art. 4, § 30.

In the case of Hawthorne v. Smith, 3 Nev. 182, the court say, speaking of section 82: "It is evident the constitution intended that at all times the homestead should be exempt from forced sale, except in a few enumerated instances. It is equally evident the legislature intended to carry out this policy;" and in that case it was held that registration of the homestead might be made after an attachment levied on it, and indeed at any time before actual sale. In so holding, the supreme court of Nevada disregarded the decisions of the courts of California upon a precisely similar provision of the homestead law of that state, to the effect that registration was a condition precedent to exemption from sale, and that liens attaching before such registration were valid. In re Reed's Estate, 23 Cal. 410; McQuade v. Whaley, 31 Cal. 526. See, also, In re Wal-ley's Estate, 11 Nev. 260; Noble v. Hook, 24 Cal. 638. If then the language of the law and constitution of Nevada is free from ambiguity; if there is no room for doubt about the intention with which that language was used, that intention must govern in spite of the decisions of the courts of another state, which do violence to that language and intention. Van Doren v. Tjader, 1 Nev. 380; Little v. Smith, 4 Scam. 402; Gray v. Askew, 3 Ohio, 466, 480.

[I come then to the more important inquiry whether in any case under the laws of Nevada, lands held by tenants in common can be the subject of a homestead exemption? Is there anything denying this right to a tenant in common, either in the language of the constitution or law, or in their spirit and general policy?] [2]

"A homestead," says the constitution, "as provided by law, shall be exempt from forced sale," etc. "The homestead," says the law, "consisting of a quantity of land, with the dwelling-house thereon, * * * shall not be subject to forced sale. * * *" There is nothing here, surely, denying the benefits of the exemption to a tenant in common. Indeed, the courts which have made the denial do it not upon what the law-giver has said, but what he has not said. If a tenant in common can, as a matter of fact, have a home on the lands held in common, the language used applies to him as fairly as it does to any one. The homestead is one thing, the title to it another. Nor is there anything in the spirit and policy of homestead exemptions which does not apply with as full force to a tenant in common as to any other person.

Two reasons have been given for denying a homestead to tenants in common, under general homestead laws substantially like that of Nevada: 1. In states whose laws require the claimant to be the owner of the property, because it requires the title of all the tenants to constitute an ownership; 2. That the statute did not contemplate carving homesteads out of tenancies in common, "because it has not provided any mode for their separation and ascertainment." Wolf v. Fleischacker, 5 Cal. 244; Thurston v. Maddocks, 6 Allen, 427. The Nevada law omits the word owner in prescribing the qualification of those who may claim the exemption, so that the first objection loses nearly, if not quite, all its force here.

The second reason hardly seems a satisfactory one for refusing to obey a plain and positive injunction of the law-makers, even if the difficulties are great. But I think, that on examination, the supposed difficulties will be found chiefly imaginary. The law does not attempt to guarantee a perfect title to the premises, or, necessarily, an exclusive ownership and possession, but it protects whatever right, title and interest the

---

[2] From 17 N. B. R. 138.

debtor has from forced sale. The object of the law is to protect from forced sale the homestead in which lives the family of a man who is so poor as to need such protection. Now a homestead, owned and occupied in conjunction with a co-tenant, is as much a shelter to the family of a poor man, as if the land were owned in severalty. The co-tenants may have rights to adjust among themselves, but a creditor has, if possible, less interest than he would have if his debtor owned the land separately instead of jointly.

In the case of Spencer v. Geissman, 37 Cal. 69, one having possession of certain premises, while the title in fee was in a stranger, filed a declaration of homestead thereon, and afterwards acquired the title in fee. In holding this declaration good, Sawyer, C. J., delivering the opinion of the court, says: "There is no question made as to its being a homestead if a party having a naked possession only, the title being in a stranger, can acquire a homestead right in the land so possessed. The statute does not specify the kind of a title a party shall have in order to enable him to secure a homestead. It says nothing about title. The homestead right given by the statute is impressed on the land to the extent of the interest of the claimant in it, not on the title merely. The actual homestead as against everybody who has not a better title, becomes impressed with the legal homestead right by taking the proceedings prescribed by the statute. The estate or interest of the occupant, be it more or less, thereby becomes exempt from forced sales." This view of the law, the correctness of which I think cannot be doubted, will give a tenant in common a homestead to the extent of his interest in the premises claimed. It seems to me to overthrow the case of Wolf v. Fleischacker, as an authority to the contrary, and that case, if still followed in California, must be so solely because it has become a rule of property. It must be borne in mind that the law does not give the claimant any title whatever to the homestead which it protects. A person, who, with his family, is actually in possession of a dwelling-house as a home, cannot be disturbed in such possession by a forced sale. But if another has a better title to the premises, or any part of them, the claimant gains nothing by having dedicated them as a homestead. In the case of tenants in common. the law can be complied with without disturbing in any way their relations to the property and each other. When the homestead of one tenant is protected from sale, it can only be, as in all other cases, to the extent of his interest. No specific portion of the common lands can be secured by the selection and recording of the homestead. The interest of the co-tenant cannot be affected in that way. The parties continue, after the interest of one is secured as a homestead. as before. to be tenants in common of the whole premises. The authorities on this question are conflicting. In favor of the exemption to tenants in common, are Williams v. Wethered, 37 Tex. 130; [Smith v. Deschaumes] Id. 429; Greenwood v. Maddox, 27 Ark. 648; Tarrant v. Swain, 15 Kan. 146; Bartholomew v. West [Case No. 1,071]; Thorn v. Thorn, 14 Iowa, 49; McClary v. Bixby, 36 Vt. 254; and see, also, Smyth, Homest. § 120; Freem. Ex'ns, § 243.

In California a tenant in common or joint owner of personal property may hold his share exempt from execution. Servanti v. Lusk, 43 Cal. 238. So in New York, Radcliff v. Wood, 25 Barb. 52. Opposed are Wolf v. Fleischacker, supra; Thurston v. Maddocks, supra, and cases in Indiana and Wisconsin. My own conclusion is, that, under the constitution and laws of Nevada, the actual homestead of every head of a family, of less value than five thousand dollars, is protected from forced sale; that there is nothing in such constitution or laws restricting the benefit of exemption to those who have any particular kind of title; that any interest the claimant may have in the dwelling-house and land constituting his actual home which would otherwise be subject to forced sale, is by the laws exempted from such sale; and, consequently, that under such circumstances the interest of a tenant in common is exempt.

In the case at bar the respondent, with the consent of his co-tenant, Lamar, has been occupying the dwelling-house and land claimed as his homestead. He and his family have no other home. As tenant in common he is rightfully in possession so long as he does not exclude his co-tenant. This home, such as it is, and subject to the rights of the co-tenant, is exempt from forced sale. The interest of Swearinger in the premises did not pass to the assignee in bankruptcy. The interest of Lamar did pass, thus making the assignee a tenant in common of the whole premises to the extent of an undivided one half interest. Swearinger and the assignee being entitled as tenants in common to a united possession of the premises, neither can exclude the other. The request or consent of Lamar to the occupation of the premises claimed did not amount to a parol partition and was not intended to be one. Since the estate of a tenant in common is subject to the same dispositions and incidents as an estate in severalty. the assignee can sell the interest of Lamar in the whole premises, and the purchaser will be entitled to a share in the possession with Swearinger. Doubtless the assignee could, if such course is advisable, proceed for a partition of the premises either in this court or the courts of the state. The interest of Swearinger in the premises was not purchased with partnership funds, and is not partnership property, if that fact would in any way affect the result.

A decretal order will be entered adjudg-

ing the assignee Smith to be the owner of an undivided one half interest in the premises described in his petition, as a tenant in common with Swearinger, and directing that he be let into possession accordingly, also adjudging the interest of Swearinger to be exempt as a homestead.