[L. A. No. 11347. In Bank.—February 1, 1932.]

MINNIE V. SIBERELL Appellant, v. HARVEY P. SIBERELL, Respondent.

Barker & Keithly, Barker, Smiley & Keithly for Appellant.

Roy V. Reppy, B. F. Woodard and Gail C. Larkin, *Amici Curiae* for Appellant.

Schweitzer & Hutton and F. C. Stevens for Respondent.

Edward D. Landels, O'Melveny, Tuller & Myers, Charles H. Brock, George I. Devor and J. F. Goux, *Amici Curiae.*

PRESTON, J.—Plaintiff obtained against defendant an interlocutory decree of divorce upon the ground of cruelty. By this decree also the real property involved was declared to be community property and was divided equally between the spouses except that the lien of a $6,000 mortgage thereon was shifted from the whole of the property to the interest awarded the defendant. Plaintiff alone appealed and her attack is leveled only at that portion of the decree affecting said real property.

Her contentions are twofold. If either is correct, the decree must be reversed. First, she contends that inasmuch as the property was deeded to husband and wife as joint tenants, under the presumption indulged by section 164 of the Civil Code, she took a half interest in it as her separate estate and respondent took the other half as community property; that therefore upon the dissolution of the tenancy by divorce, she is entitled to the half held by her as separate property and also to at least one-half the remaining half held as community property by the husband (Civ. Code, sec. 146). Second, she contends that on January 19, 1918, respondent executed to her a grant of the whole of said property, reciting a consideration of $10, by which she was vested with the entire estate therein as her separate property. We shall examine the questions in the order mentioned.

The record discloses no more than the statement that in October, 1913, the property in question was purchased with community funds and was deeded to plaintiff and defendant as joint tenants. A question therefore arises at the threshold as to the nature of the estate thereby taken and received by them as husband and wife. Under such circumstances, was not the common property, by the consent of the spouses, then and there transmuted into one estate, the separate property of each and held jointly by them?

■ Under sections 158 and 159 of the Civil Code, it is now well settled that husband and wife may, as between themselves, enter into any contract respecting property which either might, if unmarried. Under this plenary authority, the separate property of each may be converted into community property and the community property of both may likewise be converted into separate property of both or either. (*Perkins* v. *Sunset Tel. etc. Co.*, 155 Cal. 712, 719, 720 [103 Pac. 190], and cases there cited.)

■ We then approach the definition of community property as disclosed by sections 163, 164 and 687 of the Civil Code. Section 163 provides: ''All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, . . . is his separate property.'' Section 164 then provides: ''All other property acquired after marriage by either husband or wife, or both, including real property situated in this state . . . which would not have been the separate property of either if acquired while domiciled in this state is community property . . . '' Section 687 reads: ''Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either.''

From these statutes it must follow that all property not held as community property must, for the want of a better name, be classed as separate property. The words ''or both'' found in section 164 are somewhat confusing but when read in connection with sections 161 and 682, this uncertainty disappears. ■ For from these last-mentioned sections it is clear that husband and wife may take, hold and enjoy real property either as joint tenants, tenants in common or as common or community property. ■ A joint interest is defined by section 683 as follows: ''A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants.''

An interest in common is defined by section 685 as follows: ''An interest in common is one owned by several persons, not in joint ownership or partnership.'' And as showing that these several estates are treated as being separate and distinct and not in anywise interdependent, we find the

further provisions of section 686 as follows: "Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in section six hundred and eighty-three, or unless acquired as community property." (See, also, sec. 682, Civil Code.)

From these statutory provisions it is clear that in California we have a modified form of certain estates known to the common law and have them operating alongside of the community property system, an importation from the Spanish law. Naturally, therefore, at times there will appear to be difficulty in harmonizing these systems. But our statutes have been amended from time to time, so altering the original provisions of each of the systems as to allow them both a place in our jurisprudence.

■ Respecting joint tenancy, it is only necessary to amplify the definition quoted from section 683 by a quotation from the case of *DeWitt* v. *San Francisco,* 2 Cal. 289, 297, opinion rendered in 1852, defining joint tenancy as follows: "Joint tenancy is a technical feudal estate, founded, like the laws of primogeniture, on the principle of the aggregation of landed estates in the hands of a few, and opposed to their division among many persons. For the creation of a joint tenancy, four unities are required, namely, unity of *interest,* unity of *title,* unity of *time,* unity of *possession.* 1 Cruise's Digest, (by Greenleaf,) 355, sec. 11. 2 Crabb's Real Prop. sec. 2303. But the distinguishing incident is a right of survivorship. 1 Cruise, 359, sec. 27. 2 Crabb's Real Prop. sect. 2306." These four characteristics are the acknowledged elements of a joint tenancy. (1 Tiffany on Real Property, 2d ed., p. 625, par. 191; 2 Blackstone's Commentaries 180.) It is at once evident that there is thereby created but one estate and that each of the four elements, unity of interest, unity of title, unity of time and unity of possession, must be present and an absence of any one would change the nature of the estate.

Applying the first of these elements, unity of interest, to the situation of a wife holding half the property as her separate estate and the husband holding the other half as community property, it will be at once noted that there can be no unity of interest present, for the interest of the wife would

be unequal to and more than that of the husband. This follows because the wife has always had at least a limited interest in the community property (*Stewart* v. *Stewart*, 199 Cal. 318 [249 Pac. 197]). In 1891 her rights were enlarged to require her written consent to gifts and voluntary transfers of it. In 1917 again her rights were enlarged to allow a division of the common property under certain conditions without a dissolution of the marriage ties, also requiring her signature to convey or encumber it. Again in 1923, sections 1401 and 1402 of the Civil Code were amended to give her equal testamentary power with the husband over it and in the absence of a will by the husband, she, to the exclusion of the children, takes the whole of it. Lastly, in 1927, section 161a was added to the Civil Code investing her with full title to one-half thereof, ceding alone to the husband the management and control thereof. So in the case of a joint tenancy, if the contention of appellant were followed, we would in some instances have a joint tenancy where the wife owned three-fourths of the property and the husband the remaining one-fourth. It should be noted here that we are dealing strictly with the situation as between the parties to the marriage and are not dealing with the characteristics of the property as against the claims of judgment creditors or other third persons as was the case in *Hulse* v. *Lawson*, 212 Cal. 614 [299 Pac. 525].

But we are asked to follow the presumption declared in 1889 by section 164 of the Civil Code, which in 1913 provided: " . . . Whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property. And in case the conveyance be to such married woman and her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her as tenant in common, unless a different intention is expressed in the instrument . . . "

It is true that under the recent holding in the case of *Dunn* v. *Mullan*, 211 Cal. 583 [77 A. L. R. 1015, 296 Pac. 604], following *Miller* v. *Brode*, 186 Cal. 409 [199 Pac. 531], and *Estate of Regnart*, 102 Cal. App. 643 [283 Pac. 860], it was declared that property deeded to husband and wife without explanation is presumed to vest the wife with a half interest therein as her separate estate and the hus-

band with the remaining half as community property and because of this holding it is said to be logical to extend this presumption to the situation before us. But we can see no reason whatsoever to indulge this presumption here. This follows for at least two reasons:

First, from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate. It would be manifestly inequitable and a subversion of the rights of both husband and wife to have them in good faith enter into a valid engagement of this character and, following the demise of either, to have a contention made that his or her share in the property was held for the community, thus bringing into operation the law of descent, administration, rights of creditors and other complications which would defeat the right of survivorship, the chief incident of the law of joint tenancy. A joint tenancy is one estate and in it the rights of the spouses are identical and coextensive.

Secondly, on its face section 164 has no application to a case where "a different intention is expressed in the instrument" and it seems to us to be clear, as already pointed out above, that a joint tenancy, the evidence of which the law requires to be on the face of the conveyance creating it, is of necessity an expression of the intention to hold the property otherwise than as community property and that the equal interest of the spouses must therefore be classed as their separate but joint estate in the property.

Certain holdings of this court may be cited in support of the conclusion above announced. For example, section 1265 of the Civil Code, as it originally read, provided that the homestead, when properly declared, created the relation of joint tenancy between the spouses. In *Schuler* v. *Sav. & Loan Soc.*, 64 Cal. 397, 398 [1 Pac. 479, 480], it was said: " . . . When the declaration of homestead was made and recorded by the wife, the property became, by operation of law, the estate in joint tenancy of the husband and wife

(sec. 1265, Civ. Code of 1874), of which they were jointly seized in equal shares. It was, therefore, not part of their community property.''

In *Estate of Gurnsey*, 177 Cal. 211, 213 [170 Pac. 402, 403], treating of the effect of an agreement between husband and wife setting up a joint tenancy in a bank account, formerly community funds, it was said: ''The effect of the agreement was to create a joint estate in the property to which it relates, and the evidence introduced could not, under these circumstances, be allowed in any way to change the terms or legal effect of the agreement. The title to the money deposited passed out of the community at the time of the deposit, and it then became the joint property of the husband and wife, invested with all the attributes of such property, whether the wife understood its exact nature when she signed the agreement and accepted its benefits or not.''

It is to be noted that as between husband and wife and third persons, they were not permitted to gainsay their joint act by introducing evidence at variance with their agreement. A similar holding is found in *In re Gordon's Estate,* 44 Fed. (2d) 810. Holding that on the death of the spouse a joint deposit account is no part of his or her estate, see *Kennedy* v. *McMurray,* 169 Cal. 287 [Ann. Cas. 1916D, 515, 146 Pac. 647] ; *Estate of Harris,* 169 Cal. 725 [147 Pac. 967] ; *Hannon* v. *Southern Pac. Co.,* 12 Cal. App. 350, 355 [107 Pac. 335].

The foregoing discussion has been deemed necessary because of the plaintiff's insistence that, notwithstanding the trial court's determination adversely to her contention as to the effect of the deed of January 19, 1918, she had never waived her rights under and could still rely on the joint-tenancy deed, asserting, as above noted, that the same vested in her a one-half interest in said property as her separate estate and that the other half was community property. The point was not stressed at the trial but the question being one of law and of considerable importance, it has received the attention to which it is entitled.

 The court found that the deed of January 19, 1918, was not made by the defendant with the purpose or intent that the community character of said property should be changed so as to make it the separate property of the plaintiff. It is not disputed that the property was acquired with

community funds and the testimony of the defendant with reference to the circumstances under which the deed of 1918 was executed is sufficient evidence to support the finding that the property was community property. This is an additional reason why the division ordered by the trial court may not be disturbed. In any state of the case the court had the power to divide the property equally.

There is some argument in the briefs on behalf of the plaintiff that the deed of 1918 was made by the defendant with the intention to defraud his creditors, and that he is foreclosed from denying its effect as contended for by the plaintiff. Assuming that the plaintiff is in a position to raise the point, there is no charge in the pleadings that it was so made and the court did not find and conclude that it was so made. Apparently the court was not sufficiently impressed by the evidence on that subject to import to it any controlling value. In the absence of clear evidence of fraud under proper pleadings we may not be called upon to make a finding on the subject.

On the record before us it is manifest that no injustice was done the rights of the plaintiff by the court below. She received one-half of the property with the preference of having her half relieved of the lien of the existing $6,000 mortgage, and she could do no better on a retrial.

The interlocutory decree is affirmed.

Shenk, J., Curtis, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.