LUCILLE MYRE MULLIKIN, SOMETIMES ALSO KNOWN AS AND CALLED, LUCILLE MULLIKIN, APPELLANT, *v.* BONNIE JONES, RESPONDENT.

No. 3776

January 11, 1955. 278 P.2d 876.

*Ralli, Rudiak & Horsey,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones* and *David Goldwater,* all of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, J.:

The main two questions presented on this appeal are:

A. When premises are held by a husband and wife as joint tenants, does the occupancy of said premises as a home prevent alienation by the husband of his interest without the wife's joining in the conveyance? Or, differently expressed, does an undeclared homestead under

such circumstances, fall within the constitutional and statutory prohibition against unilateral alienation by the husband?

B. Where property occupied by a husband and wife as their home is held by them in joint tenancy, is a transmutation from such joint tenancy to community property accomplished by proof that the joint tenancy property, originally of little value, was built up to a material value through community efforts and by the use of community funds?

We answer both of these queries in the negative. Other questions, in the main incidental to the foregoing, are disposed of in the following opinion.

The facts are simple. Lucille Mullikin and Rufus Mullikin were married at Las Vegas in April 1947. Rufus had been married several times before, and had seven children by a prior marriage. Rufus owned, at the time of his marriage to Lucille, the North Las Vegas Motor Court, the subject of this litigation, being a lot approximately 100 by 200 feet on which are situated a manager's apartment (occupied by Lucille and Rufus as their home from the time of the marriage to the death of Rufus), nine rental cabins and some other improvements. Assuming, for the purpose of this opinion, the filing of an amendment to the complaint, tendered by the plaintiff but rejected by the court, and assuming certain proofs offered by plaintiff and likewise rejected, the motor court owned by Rufus at the time of the marriage had a gross value of about $20,000, was subject to encumbrances of $20,000, and was in a badly run-down condition. Lucille installed in the property some household goods and furniture worth about $1,500. In October 1947, Rufus conveyed the property to himself and Lucille as joint tenants by regular form of joint tenancy deed, which was at once recorded. At the same time both parties made their wills, each leaving all of his estate to the other. Both spouses devoted their time and efforts to the property until Rufus became ill with tuberculosis some two years after the marriage. In the

spring of 1950 he took to his bed in his last illness and died in July 1951. During the entire period of his illness all the work of the motor court was done by Lucille. All the rental proceeds above what was necessary for living expenses went toward paying off the encumbrances and improving the property, with the result that at the time of Rufus' death the mortgages had been reduced to about $1,500. In October 1950, Rufus executed a deed conveying all his interest in the property to his daughter, Bonnie Jones, the respondent herein, defendant below, which deed she recorded in July 1951, some two weeks after Rufus' death.[1]

The trial court found that Rufus and Lucille owned and held the property as joint tenants, and that Rufus had conveyed his interest in the premises prior to his death to his daughter Bonnie Jones for a sufficient consideration. As a conclusion of law it held that the property had been held by Rufus and Lucille in joint tenancy and not as community property. Judgment was entered denying Lucille's prayer for a decree quieting her title to the entire property, and granting the prayer of respondent's cross complaint for a decree quieting her title to an undivided one half interest.

This appeal challenges first the holding of the trial court that an undeclared or de facto homestead may not exist in real property held by the husband and wife as joint tenants; and, secondly, the holding that the contribution of community efforts and community earnings, greatly enhancing the value of the property, did not result in transmuting the joint tenancy to that of community property.[2] There are other assignments of error, which are dealt with later.

---

[1]Lucille on November 9, 1951 filed and recorded a declaration of homestead, in which she claimed the entire premises as a homestead. Appellant asserts no rights under this instrument and it plays no part in this appeal.

[2]Appellant states her second proposition thus: "If it should be held that a de facto homestead can exist only in community property, then the court erred in refusing to permit the appellant to prove that the real property in question, although title thereto was

The first question involves construction and interpretation of certain constitutional and statutory provisions in the light of the decisions of this and other appellate courts in the so-called community property states.

Section 30 of Article IV of the Constitution provides: "A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists; * * * and laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situated."

Section 31 of Article IV defines the separate property of the wife as that owned before marriage and afterward acquired by gift, devise or descent, and then provides, "and laws shall be passed more clearly defining the rights of the wife in relation, as well to her separate property as to that held in common with her husband."

Section 6 of "An Act defining the rights of husband and wife," enacted pursuant to the constitutional mandate and being sec. 3360, N.C.L.1929, provides: "The husband shall have the entire management and control of the community property, with the like absolute power of disposition thereof, except as hereinafter provided, as of his own separate estate; provided, that no deed of conveyance or mortgage of a homestead as now defined by law, regardless of whether a declaration thereof has been filed or not, shall be valid for any purpose whatever unless both the husband and wife execute and acknowledge the same * * *."

Section 1 of "An Act to exempt the homestead and other property from forced sale in certain cases," being sec. 3315, N.C.L.1929, as amended, reads as follows:

"The homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value ten thousand dollars,

---

vested in husband and wife as joint tenants, was, in fact, in whole or in part, the community property of husband and wife." But this involves an unwarranted assumption of the proof offered and which the trial court rejected.

to be selected by the husband and wife, or either of them, or other head of a family, shall not be subject to forced sale on execution, or any final process from any court, for any debt or liability * * *, except process to enforce the payment of the purchase money for such premises, or for improvements made thereon, or for legal taxes imposed thereon, or for the payment of any mortgage thereon executed and given by both husband and wife, when that relation exists. Said selection shall be made by either the husband or wife or both of them, or other head of a family, declaring their intention in writing to claim the same as a homestead. Said declaration shall state when made by a married person or persons that they or either of them are married, or if not married, that he or she is the head of a family, and they or either of them, as the case may be, are at the time of making such declaration, residing with their family, or with the person or persons under their care and maintenance, on the premises, particularly describing said premises, and that it is their intention to use and claim the same as a homestead, which declaration shall be signed by the party or parties making the same, and acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded; and from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants; provided, that if the property declared upon as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character of separate property until the death of one or the other of such spouses, then and in that event the homestead right shall cease in and upon said property, and the same belong to the party (or his or her heirs) to whom it belonged when filed upon as a homestead; and provided further, that tenants in common may declare for homestead rights upon their respective estates in lands, and

the improvements thereon; and hold and enjoy homestead rights and privileges therein, subject to the rights of their cotenants, to enforce partition of such common property as in other cases of tenants in common."

(1) With these constitutional and statutory provisions in mind, we approach first the question whether an undeclared or de facto homestead may exist on the property thus held by the husband and wife as joint tenants, placing it within the restrictions of sec. 30 of Article IV of the Constitution and the proviso contained in sec. 3360, N.C.L., and preventing a unilateral alienation of his undivided interest by the husband.

Appellant points out that no statute of this state provides in so many words that the homestead which may not be conveyed except by an instrument executed by both the husband and wife, applies *only* to the community property; that no statute provides that such homestead *may not* apply to other than the community, with the exception of the provision contained in sec. 3315 that both must join in the execution and acknowledgment of a declaration of homestead upon the separate property of either spouse; that no statute expressly *prohibits* a homestead on property held by the spouses as joint tenants; that the "protecting mantle" of sec. 30 of Article IV is thrown over "a homestead" without regard to the nature of the tenancy under which it is held. Despite the many cases reaching this court having to do with both the constitutional and statutory provisions governing the selection of a homestead, the rights and liabilities of the parties involved, the protection afforded to the husband and wife against forced sale and the protection afforded to the wife from alienation by the husband, the precise point as to whether the undeclared homestead secured against alienation without the wife's consent is confined to the community has not been determined. Yet we have definite indications that the undeclared homestead protected against the husband's unilateral alienation must pertain to the community

property. The first is the fact that the only statutory provision voiding an attempted alienation by the husband without joint action by the wife is sec. 6 of "An Act defining *the rights of husband and wife,*" being sec. 3360, N.C.L., and which simply restates the constitutional prohibition of such unilateral alienation found in sec. 30 of Article IV. The act in question was, however, enacted pursuant to the mandate of sec. 31 of Article IV that "laws shall be passed more clearly defining the rights of the wife in relation, as well to her separate property as to that held in common with her husband."[3]

In First National Bank of Ely v. Meyers, 39 Nev. 235, 150 P. 308, 310, this court first stated that the question for determination was whether the husband's unilateral deed was void "because the *property in question is community property* * * *.*" It emphasized that the rights of the wife *"in property held in common with her husband"* were clearly defined in said sec. 6; that the act in question "is, as its title sets forth, an act defining the rights of husband and wife," and that its purpose was to secure to the wife and dependents the shelter of a home acquired by the joint efforts or joint endeavor

[3]In First National Bank of Ely v. Meyers, 39 Nev. 235, 150 P. 308, McCarran, J., says that sec. 3315 (there referred to as the Act of 1865) exempting the homestead from forced sale, was passed pursuant to the direction of sec. 30 of Article IV of the Constitution; and that sec. 3360 (there referred to as sec. 6 of the Act of 1873) "defining the rights of husband and wife," as amended in 1897, was enacted pursuant to sec. 31 of Article IV. Appellant insists that in the opinion on rehearing, 40 Nev. 284, 161 P. 929, 932, the court receded from this view and held that sec. 3360 was enacted pursuant to the mandate of sec. 30 of Article IV. We do not so read the opinion on rehearing. On the contrary, the court there said: "[T]he amendatory act of 1897 [sec. 3360 N.C.L. 1929] was clearly within the mandate of the Constitution providing that 'laws shall be passed more clearly defining the rights of the wife,' etc." This is the wording of sec. 31 of Article IV, though it is true that in the same opinion the court said that sec. 3360 "effected no greater limitation on the powers of the husband to alienate a homestead than did section 30 of Article IV of the constitution itself." The fact would appear to be that sec. 3360 was enacted pursuant to the mandate of sec. 31, but within the declaration of the fundamental law laid down by sec. 30.

and industry of both spouses. The defense upheld by the court in that case was based upon *"the community character* of the property in question," and the court characterized the intention of the legislature as bringing the protection "to bear on *the community property* actually occupied as a homestead." Cases from the Supreme Court of Washington cited in the opinion emphasize the purpose of the homestead statutes *as affecting the community property* of the husband and wife. In the opinion on rehearing, 40 Nev. 284, 161 P. 929, it is noted that the Act of 1865 (now sec. 3315, N.C.L.), although "it declared as to the property out of which the homestead might be created," nowhere "by any word or expression limits, prescribes, or designates the rights of the respective parties to alienate" the homestead, but simply exempts the same from forced sale on execution. In particular, said MCCARRAN, J., speaking for the court: "The amendatory act of 1897 (3360 N.C.L.) was a limitation to the dominance of the husband *over the community property."* He ridiculed the contention that selection and recordation were necessary to notify the husband that *"The community property* * * * could not be alienated by him."

Appellant relies on the annotation found in 89 A.L.R. 511, 540, to the effect that, under the majority rule, a tenant in common or a joint tenant may acquire a homestead in the undivided premises. But this deals entirely with the right to declare a homestead. In re Swearinger (U.S. Dist. Ct. for Dist. of Nev.) 5 Sawy. 52, Fed. Case No. 13,683, cited in the annotation, likewise does not deal with alienation by one of the spouses holding in joint tenancy. Appellant also relies on Walton v. Walton, 59 Cal.App.2d 26, 138 P.2d 54, but there the wife, holding jointly with her husband, actually filed her declaration of homestead which, under sec. 1238 C.C.Cal., could be selected from property held by the husband and wife as joint tenants, as she had the right under California law to impress the homestead not only on her own undivided

interest, her separate property, but also on the separate property of the husband—his undivided interest in the joint tenancy. In that case, as in Swan v. Walden, 156 Cal. 195, 103 P. 931, the California court understandably held that the husband could not destroy the homestead by a partition sale, placed by the court in the same classification as other examples of a "forced sale." Section 3315, N.C.L., which deals with the exemption of the homestead from forced sale in Nevada, expressly provides, as distinguished from the California statute, "that if the property declared upon [and in the instant case there was no declaration] as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration." In addition we may note that the Walton and Walden cases holding against the destruction of the homestead by partition relied upon the rule "that land occupied as a homestead may be regarded as subject to a trust imposed by law which would necessarily be defeated by partition." [59 Cal.App.2d 26, 138 P.2d 57.] Such trust theory is not advanced by appellant and we are not called upon to discuss it. These California cases, on which appellant places strong reliance, are clearly not in point.

We must accept as true that fact that in Nevada as in California (Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003) we have, by our Constitution and statutes, on the one hand adopted the community property system, and have at the same time recognized and accepted certain estates known to the common law. "A husband or wife may hold real or personal property as joint tenants, tenants in common, or as community property." Section 3362, N.C.L.1929. And they may enter into any contract with each other respecting property into which they might enter if unmarried. Id. sec. 3373. In adhering to or diverging from the common law system or the community system, our legislature has from time to time

modified the operation of both. We have long recognized the attributes of the common law joint tenancy, though we have abandoned complete adherence to the requirement of the manner of its acquisition. (See N.C.L.1931–1941 Supp., sec. 3710.) And provisions for disposition of the community property (whether by will, in case of intestacy, or on divorce) have been the subject of constant legislative amendment. In all the process of adoption and change, this state has never by direct statute or judicial construction provided for the recognition of a de facto homestead (with exceptions not material here) other than out of the community property of the spouses, so as to defeat unilateral alienation by the husband.

Appellant advances the statement that it is the accepted practice in Nevada for husbands and wives to take title to property as joint tenants, and contends that where such property also happens to be the de facto homestead of the parties, an affirmance of the judgment would be to subject thousands of wives in this state to the danger of losing their family homes through fraud or improvidence of husbands in which such wives have had no part. The benefits and dangers, the advantages and disadvantages of joint tenancies by husband and wife have been for many years the subject of wide discussion among lawyers, banks, trust companies and others, and in later years with a special view to federal tax liabilities. A choice of the tenancy must be made, and we may assume that it will sometimes be made inadvisedly or that later developments may indicate that the choice, seemingly advantageous at the time, has resulted in loss or hardship. It may even be (and as to this we express no opinion) that statutory amendment in some respect may be in order. These considerations, however, may not alter what we think is the clear purport of our present constitutional and statutory provisions as interpreted by this court. We see no escape

from the conclusion to be drawn from the legislative intent, following the constitutional mandate, and as applied by this court in both of the Meyers decisions, to the effect that the undeclared homestead protected against unilateral alienation by the husband was the homestead comprising the community property of the spouses.[4]

(2) We turn then to the next question to be determined, namely, whether the evidence (including that rejected by the court as well as that admitted) established as a matter of law a transmutation from a joint tenancy to community property. This involves the determination of the further question whether, in addition to the proof that the joint tenancy property was built up to its present value by the community efforts and the community funds, proof was essential either (a) that it was acquired and built up with such intent in the first instance, or (b) that, although acquired without such initial intent, it was so transmuted by agreement of the parties.

That a transmutation from property held in joint tenancy by the husband and wife to community property is susceptible of proof we consider to be now firmly established. Such conclusion is questioned by respondent by reason of the statement contained in Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003, 1005: "The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property, but instead as a joint tenancy with all the characteristics of such an estate." The court then explains its reason for such conclusion: "It would be

---

[4]No question presented in this appeal necessitates any discussion of those clauses contained in sec. 3315 having to do with a declaration of homestead upon the separate property of either spouse, or upon the respective estates in lands held by the spouses as tenants in common.

manifestly inequitable and a subversion of the rights of both husband and wife to have them in good faith enter into a valid engagement of this character, and, following the demise of either, to have a contention made that his or her share in the property was held for the community, thus bringing into operation the law of descent, administration, rights of creditors, and other complications which would defeat the right of survivorship, the chief incident of the law of joint tenancy. A joint tenancy is one estate, and in it the rights of the spouses are identical and coextensive."

Respondent refers us also to Tomaier v. Tomaier, 58 A.C.A. 647, 137 P.2d 26, 28, which on the whole supports such contention and justifies such support by quoting the language of Siberell v. Siberell, supra. It also found support in Delanoy v. Delanoy, 216 Cal. 23, 13 P.2d 513,. 514, which in turn relied on the Siberell case, but overlooked the fact that such holding in the Delanoy case to the effect that the joint tenancy holding was tantamount to an agreement so to hold, limited this by the statement that this was so determined "in the absence of any evidence of an intent to the contrary." This is the more significant because the Tomaier case above cited, a decision of the District Court of Appeal of the State of California, was thereafter reversed by the supreme court of that state, Tomaier v. Tomaier, 23 Cal.2d 754, 146 P.2d 905, 906, limiting the effect of the Siberell case and holding definitely that evidence is admissible to prove that the property in question, though acquired by a deed vesting the title in joint tenancy, is nonetheless community property. Mr. Justice Traynor speaking for the unanimous court there said:

"It is the general rule that evidence may be admitted to establish that real property is community property, even though title has been acquired under a deed executed in a form that ordinarily creates in the grantee a common law estate with incidents unlike those under the law of community property. Thus land may be shown

to be community property even though it is granted to one spouse alone as his or her property in fee simple. [citing cases]

"Again, it may be shown that husband and wife intended to take property as community property even though they accepted a deed drawn to them as tenants in common. [citing cases] It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property. [citing cases] Such rulings are designed to prevent the use of common law forms of conveyance to alter the community character of real property contrary to the intention of the parties.

"Moreover, it is well settled that property may be converted into community property at any time by oral agreement between the spouses [citing In re Estate of Watkins, 16 Cal.2d 793, 108 P.2d 417, 109 P.2d 1, and other cases], and an agreement at the time the property is acquired has the same effect. If the evidence establishes that the property is held as community property, however, it cannot also be held in joint tenancy, for certain incidents of the latter would be inconsistent with incidents of community property."

This is entirely in accord and analogy with the holding of this court in the Petition of Fuller, 63 Nev. 26, 159 P.2d 579, although that case dealt with the matter of a transmutation to the community of property conveyed to the husband the day after the marriage, and which he later conveyed to the wife. Referring to the presumption of community ownership arising from the first deed and the presumption of separate ownership in the wife arising from the second deed, this court, speaking through TABER, C. J., said that both presumptions were rebuttable, though clear and convincing evidence was required to show a transmutation.

In re Estate of Watkins, 16 Cal.2d 793, 108 P.2d 417, 419, 109 P.2d 1, a leading case, the rival claimants to the

estate were the relatives of Henry G. Watkins, deceased, on the one hand, and a relative of Jean Watkins on the other. Henry and Jean were married in 1899. Henry died in 1926 and Jean in 1936. They had accumulated a large estate. Shortly before the death of Henry, he and Jean executed a joint and mutual will in which they declared that all of their property was accumulated and acquired during marriage and was community property. In the proceedings to determine inheritance tax during proceedings in the husband's estate, Jean testified that all of the property of which Henry died possessed either in his own right or as tenant in common with her or as joint tenant with her was the community property of Henry and her. Much of the property had been conveyed by them to a third person and reconveyed to them as joint tenants. This was before the execution of the joint and mutual will referred to. The supreme court assumed the intention of the parties to create themselves joint tenants by the deed referred to and that the deed carried out such intention, but said: "* * * it seems entirely clear that subsequently and at the time of the execution of the joint and mutual will, they jointly expressed their intention in writing that all of said property should have the status of community property. It is well settled that a husband and wife may agree with respect to the character of the property which they hold and that they may transmute their property from one status to another by an agreement which ordinarily need not be executed with any particular formality." Earlier California cases are cited and discussed. To like effect is In re Wilson's Estate, 64 Cal.App.2d 123, 148 P.2d 390, 392, in which title vested in the spouses as joint tenants, after which the husband conveyed to the wife by deed of gift. Under testimony of the husband to the effect that he gave his wife the money for the down payment and the subsequent payments on the property, all from his salary, that he had no intention to make a gift, that the property was bought to be their home, that it was to be

community property and that if either died, it was to go to the other, the court held that "as between Mr. and Mrs. Wilson and those claiming through them, the character of their interest in the property is not necessarily that which would follow from the form of the deeds. It is now too well settled to justify more than the citation of the authorities that in spite of the mold into which a deed would seemingly press a title, either because of the intent with which the deed was made [citation] or made and received [citation], or because of an oral agreement between a husband and wife, carried into effect, determining their respective interests in real estate [citations] property which, measured by the deed, would not be community property, nevertheless may be just that." The court then cited Tomaier v. Tomaier, 23 Cal.2d 754, 146 P.2d 905, to like effect, and decided that the trial court "had ample justification" for concluding that at the death of Mrs. Wilson the property was community property of herself and Wilson.

In Chase v. Leiter, 96 Cal.App.2d 439, 215 P.2d 756, the husband and wife held certain property in joint tenancy, but made a joint and mutual will in which they agreed that all of their property was community property. The court referred to Estate of Watkins, supra, as the leading case, and quoted the language which we have quoted above, stating further that the mutual and joint will must be held to have constituted an agreement between the spouses fixing the status of their property as community property. In addition to Estate of Watkins the court cited Estate of Sehabiague, 47 Cal.App.2d 793, 119 P.2d 30, and In re Wilson's Estate, 64 Cal.App.2d 123, 148 P.2d 390. This was in answer to the contention that the Watkins case was the only one so holding except in divorce cases. See also to like effect McRay v. Winter, 118 Cal.App.2d 800, 801, 258 P.2d 872; Faust v. Faust, 91 Cal.App.2d 304, 204 P.2d 906; Andrews v. Andrews, 82 Cal.App.2d 521, 186 P.2d 744; Silverstein v. Silverstein, 76 Cal.App.2d 872, 174 P.2d 486; Huber v. Huber,

27 Cal.2d 784, 167 P.2d 708; and In re Kessler, 217 Cal. 32, 17 P.2d 117. The conclusion to be drawn from all of these cases is undoubtedly that property acquired in the name of either spouse, or taken by both spouses as tenants in common or as joint tenants may be, by agreement between them, transmuted into community property.

Having thus established, with perhaps unjustified laboriousness, that a transmutation may be proved, we turn to the facts of the present case. The essential facts were cited early in this opinion. Appellant's point of view, however, may be further illustrated by her assignments of error in the trial court's refusal to admit in evidence a number of items offered by her. These include: evidence of the value of the motel property at the time of the joint tenancy deed; numerous documents showing the extent of the encumbrances at the time; documentary evidence of the payments made against these encumbrances; accounts showing income and expenses of the motel; oral testimony in support of and explaining the foregoing items; testimony as to the commingling of funds; and testimony as to the failure of appellant's husband, while he was keeping the books and accounts, to make any segregation of the income attributable to the motel as such from that attributable to the personal efforts of the parties. After offering these proofs, counsel stated to the trial court: "That is the sum and substance of what we offer to prove by the testimony of this witness if permitted by the court." An objection was sustained on the ground that the evidence was immaterial. (The limiting phrase "of this witness" does not affect the situation.) We arrive at the same result whether we treat this question under the assigned error of the rejection of the evidence or under the assigned error of the court's conclusion that the property retained its character of a joint tenancy, assuming the admission of the proffered evidence. No case has been called to our

attention, nor have we discovered one in our own research, in which a transmutation from joint tenancy to community was held to have taken place without proof either that the property was acquired with the intent that it be held in a tenancy different from that indicated from the form of the deed, or that, although acquired without such initial intent, it was later transmuted by agreement of the parties. Appellant repeatedly complains that she was not permitted to show "the intention" of the parties under the joint tenancy deed, but we find in the record no offer to prove such intention. Referring apparently to the use of community funds and efforts to improve the property, appellant contends that "even circumstantial evidence is admissible to prove such intent," and cites Tomaier v. Tomaier, 23 Cal.2d 754, 146 P.2d 905; McRay v. Winter, 118 Cal.App.2d 800, 801, 258 P.2d 872 and Williamson v. Kinney, 52 Cal.App.2d 98, 125 P.2d 920. In all of these cases, however, the record contained testimony of a declared intent or an agreement to hold the property as community property. The only testimony in the instant case that even approaches any of the situations in which the evidence was held sufficient to support a conclusion of transmutation was plaintiff's testimony of statements made by her husband: "He always told me that the place was mine if anything happened to him * * *. He told me he didn't think he was ever going to get well and if I would use my head and take care of the home place I would have a living the rest of my life." Another witness testified: "He told me that he knew he couldn't get well. It was only a matter of time, and that if Lucille would stay at the court she should be well cared for, because the will was made so that his children could not bother it and her children could not bother it should she die before he did." It is at once evident that this is entirely consistent with the desire, intention and agreement of the parties that the property continue to be held in joint tenancy.

It is unnecessary for us to determine, and we do not determine, that under no circumstances may the intent of the parties be established through circumstantial evidence. Our affirmance of the judgment goes only to the extent of holding that the use of community funds, earnings and efforts to build up and materially increase the value of the joint tenancy property, without further proof of original intent or subsequent agreement to hold the property as community is insufficient to prove a transmutation from joint tenancy. As a matter of "hindsight," the wife would have been far better off with an undeclared homestead in community property which the husband could not have alienated without her joining in the deed. But they held under a joint tenancy with its attendant benefits and dangers. The continued building up of the property and the discharge of the encumbrances were just as compatible with the benefits to be derived from a joint tenancy as those to be derived from a holding as community property. So far as the record discloses, even including the testimony offered, the intention to take and hold the property as joint tenants never changed. Absent any proof of intent or agreement to the contrary, we are left with the holdings of the Siberell, Delanoy and Tomaier cases, and others, that the taking and holding of the property in joint tenancy was tantamount to an agreement so to hold it. The joint tenancy thus created and preserved was subject to dissolution by a conveyance of his interest to a third party on the part of either of the joint tenants.

(3) The opinion of the trial court indicates its feeling that, despite the law that compelled a judgment for respondent, appellant had been rather shabbily treated— not only by her husband's conveyance of his interest in the property, but by the fact that, from the date of such conveyance on October 6, 1950, until July 5, 1951, when the first knowledge of this transfer was disclosed to

appellant, respondent permitted appellant to devote the proceeds of the motel business to the further discharge of the mortgage and to the improvement of the property and the enhancement of its net value. Appellant contends that under such circumstances and through application of the clean hands doctrine, it was an abuse of the court's discretion to grant respondent equitable relief by way of quieting her title to her half interest in the property. The court, in its awareness of the whole picture, ordered an accounting of the motel business for this period, and, as we understand the effect of the order, respondent will be precluded from any of the profits of the motel during such time. The plaintiff's complaint to quiet her asserted title to the entire property called forth defendant's cross complaint to quiet title to her asserted half interest. A complete adjudication of the rights of the parties was in order. We find no abuse of discretion in the order made.

The judgment is affirmed with costs.

Merrill, C. J., and Eather, J., concur.