JASON SMOLEN, as Ttustee for the MARTIN SMOLEN
Revocable Trust Agreement, Appellant, v. ROSLYN
SMOLEN, Respondent.

No. 28390

April 9, 1998                                    956 P.2d 128

*Rolle & Stone,* Las Vegas, for Appellant.

*Treitler & Montisano,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Martin Smolen and respondent Roslyn Smolen married on
March 1, 1970. In 1990, doctors diagnosed Martin with a brain
tumor. Martin's physical health began to deteriorate. To protect
their assets from liability for extensive, anticipated medical costs,
the parties consulted a lawyer, who advised them to divorce.

On February 8, 1994, the district court entered a Decree of Divorce terminating the marriage and dividing the parties' property. In this decree, the district court ordered that "the following community property of the parties shall remain in joint tenancy: (i) Real property located at 3676 Pecos Road, Las Vegas, Nevada." This language reflects the parties' desire that the survivor retain ownership of the residence.

Martin and Roslyn lived together for nine months after the divorce, during which time Martin's health continued to deteriorate. In August 1994, doctors diagnosed Martin with degenerative brain disease, dementia, and atypical Parkinson's disease. In November 1994, Roslyn obtained temporary legal guardianship of Martin without his knowledge or consent.

On December 8, 1994, Roslyn put Martin in a group home, against his wishes. Martin did not want to live in a group home; he wished to remain at the couple's Las Vegas residence. Martin contacted his nephew, appellant Jason Smolen, an attorney in Virginia. Jason hired a Nevada attorney to assist Martin; this attorney filed a motion with the district court seeking to terminate Roslyn's temporary guardianship. Based on an April 19, 1995 hearing, the district court revoked Roslyn's temporary guardianship and found Martin competent to manage his person and estate.

On May 26, 1995, Martin established a revocable trust naming Jason sole beneficiary and successor trustee. Martin also instructed Jason as to his wishes regarding the remainder of his estate. Martin executed a deed, dated May 31, 1995, by which he transferred his interest in the Las Vegas residence to this new trust. On July 4, 1995, Martin apparently suffered a stroke, which rendered him incapacitated and dependant upon life support.

Between Martin's July 4th stroke and his death on October 15, 1995, Martin resided at Sunrise Hospital. While Martin was at Sunrise Hospital, Roslyn discovered that Martin had deeded his interest in the Las Vegas residence to Jason. She contacted Jason numerous times in an effort to compel him to deed Martin's interest in the property back to her. Jason claims that he offered several compromise proposals to Roslyn, in an attempt to resolve her concerns while carrying out his uncle's clearly articulated wishes. Roslyn rejected Jason's offers, including the opportunity to remain in the residence, cost free, for the rest of her life. On October 29, 1995, Roslyn retained counsel to assist her in this matter.

On December 29, 1995, Roslyn moved to cancel the May 31,

1995 deed. A January 23, 1996 hearing resulted in a February 9, 1996 district court order. In this order, the district court cancelled the May 31, 1995 deed, recorded June 6, 1995, and ordered that "the property [the Las Vegas residence] is to be returned to the community and deeded to the Plaintiff [Roslyn] as the survivor." Jason appealed this order of the district court.

In her motion to cancel Martin's May 31, 1995 deed, Roslyn successfully argued that upon entering into the divorce, Martin and Roslyn had an agreement that the surviving spouse would own 100 percent of the Las Vegas residence. Roslyn now argues that the district court's order that the property "shall remain in joint tenancy" reflects this understanding. Roslyn also argues that the district court's order expressly preserves the joint tenancy, and thus, impliedly prohibits its destruction. Consequently, Roslyn argues, the deed transferring Martin's interest in the joint tenancy violated the divorce decree and, therefore, was void.

At common law, creation of a joint tenancy required four unities: interest, time, title and possession. *See* Tenhet v. Boswell, 133 Cal. Rptr. 10, 13 (Ct. App. 1976). If one of these unities was destroyed, a tenancy in common remained. *See id.* Severance of a joint tenancy extinguished the principal feature of the estate, the right of survivorship. *See* Riddle v. Harmon, 162 Cal. Rptr. 530, 531 (Ct. App. 1980).

> This 'right' [of survivorship associated with a joint tenancy] is a mere expectancy that arises 'only upon success in the ultimate gamble, survival, and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance . . ., by partition proceedings . . ., by involuntary alienation under an execution . . . ., or by any other action which operates to sever the joint tenancy.'

*Riddle,* 162 Cal. Rptr. at 531 (quoting *Tenhet,* 133 Cal. Rptr. at 14). At common law, each joint tenant possessed the indisputable right and power to convey his or her interest in the estate, without the knowledge or consent of the other joint tenant, thereby terminating the joint tenancy. *See id.*

This court has "long recognized the attributes of the common law joint tenancy, though we have abandoned complete adherence to the requirement of the manner of its acquisition."[1] Mullikin v. Jones, 71 Nev. 14, 24, 278 P.2d 876, 880 (1955). Consequently, the district court's order stating that the property "shall remain in

---

[1]NRS 111.065, entitled "Joint tenancy in real and personal property: Creation," sets forth Nevada's revised requirements for the creation of a joint tenancy.

joint tenancy'' created a joint tenancy replete with all characteristics attributable to this estate under the common law. One such characteristic is the power of any joint tenant to unilaterally transfer his interest and terminate the estate. The language of the divorce decree does not prohibit future transfer or alienation of the property. Thus, Martin severed the joint tenancy when he conveyed his interest in the Las Vegas residence to the new trust. This transfer not only severed the joint tenancy but also created a tenancy in common between Roslyn and the new Martin Smolen trust. Upon Martin's death, his interest in the Las Vegas property passed through the trust to Jason, rendering Jason a tenant in common with Roslyn.

Martin and Roslyn, like all joint tenants, possessed not only an interest in the joint tenancy but also the power to transfer such interest and sever the tenancy. Martin's transfer of his interest in the joint tenancy terminated the joint tenancy but did not violate the common law or the divorce decree.

Therefore, we conclude that the district court's order of February 9, 1996, cancelling the deed effecting Martin's transfer, contradicts the common law rule that such transfer is valid. Accordingly, we reverse the district court's order of February 9, 1996, and remand this case to the district court for issuance of a new order in accordance with this opinion.