BERNARD GROSS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gross v. Commissioner
Docket No. 17301-91
United States Tax Court
T.C. Memo 1995-425; 1995 Tax Ct. Memo LEXIS 419; 70 T.C.M. (CCH) 588; August 29, 1995, Filed *419 Decision will be entered under Rule 155. David A. Katz, for petitioner. Debra Lynn Resale, for respondent. DAWSON, Judge. NAMEROFF, Special Trial Judge DAWSON; NAMEROFF
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined deficiencies and additions to tax in petitioner's Federal income taxes for the taxable years 1979, 1980, and 1981, as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)
6653(a)(1)
6653(a)(2)
6654(a)
1979
$ 120,177
$ 30,044
$ 6,009
-- --
$ 4,995
1980
100,935
25,234
5,047
-- --
6,431
1981
85,872
21,468
-- $ 4,294
[1]
6,580
*420 After concessions by respondent, the issues for decision are: (1) Whether petitioner had unreported Schedule C income resulting from the disposition of various parcels of real property during the taxable years 1979, 1980, and 1981; (2) whether petitioner received unreported interest income in 1979 and 1980 in the respective amounts of $ 1,883 and $ 959; (3) whether petitioner received relief from indebtedness income in 1981 in the amount of $ 12,140; and (4) whether petitioner is liable for the additions to tax as determined by respondent. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in Chatsworth, California. Petitioner bears the burden of proving that respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). For convenience the findings of fact and opinion are combined in this case. I. Applicability of California Law
In the notice of deficiency respondent determined that petitioner failed to file his 1979, 1980, and 1981 Federal income *421 tax returns. Moreover, respondent determined that petitioner had unreported Schedule C income, interest income, and discharge of indebtedness income, all of which arose from petitioner's trade or business of buying and selling real estate. Respondent also allocated all of the unreported income to petitioner, allowed petitioner one exemption and the standard deduction for a married person filing separately, and computed his tax liability on the basis of married, filing separately. At trial, respondent conceded that for the 1981 taxable year, only one-half of the unreported income was attributable to petitioner. However, with respect to 1979 and 1980, respondent contends that, because petitioner's wife, Rebecca Gross, allegedly filed a separate return for the taxable years 1979 and 1980 which did not include any of the income from petitioner's trade or business of buying and selling real estate, [2] all of the income is petitioner's separate property. *422 California is a community property State, and, under California law, each spouse generally has an equal interest, i.e., a one-half interest, in all personal and real property that is acquired during the marriage. Cal. Civ. Code secs. 5105, 5110 (West 1983). [3] That one-half community property interest plainly extends to each spouse's earnings. United States v. Malcolm, 282 U.S. 792 (1931); Simmons v. Cullen, 197 F. Supp. 179, 181 (N.D. Cal. 1961). Where a spouse living in a community property State files a separate return, he or she must generally report one-half of all community income. See United States v. Mitchell, 403 U.S. 190 (1971); United States v. Malcolm, supra.
It is *423 undisputed that petitioner and Rebecca Gross were married and living together during the years in issue. At the trial, petitioner contended that he supported his wife and four children during these years and is entitled to exemptions for them. [4] Thus, where applicable, we will apply the community property laws of California herein. In addition, several of the properties were held by petitioner and Rebecca Gross as joint tenants. When property is conveyed to husband and wife as joint tenants, the conveyance creates a tenancy in which the interests of the husband and wife are the separate property of each. Siberell v. Siberell, 214 Cal. 767, 773, 7 P.2d 1003 (1932); Mears v. Mears, 180 Cal. App. 2d 484, 500, 4 Cal. Rptr. 618 (1960). *424 Thus, where property was held by petitioner and Rebecca Gross as joint tenants, or as community property, one-half of the income and deductions attributable to such property is allocable to petitioner. Finally, with respect to the property which was clearly held as petitioner's sole and separate property, all of the income and deductions attributable to such property will be allocated to petitioner. II. Real Estate Transactions
During the taxable years 1979, 1980, and 1981, petitioner was engaged in the trade or business of buying and selling real estate. Generally, he purchased real property in the Los Angeles area and sold the property within a short period of time. In fact, in some instances, both the purchase and sale were recorded in the Official Records of Los Angeles County (hereinafter referred to as the Official Records) on the same day. Petitioner did not file Federal income tax returns for the years at issue, nor did he supply adequate books and records from which to compute his tax liability. Respondent reconstructed petitioner's income or loss from these transactions by relying upon the documentary stamps listed on the various grant deeds [5] *426 recorded in the Official *425 Records, and by relying on other information from such deeds, from recorded trust deeds, and, on occasion, from escrow instructions. In this manner respondent reconstructed petitioner's cost basis in each of the properties and the amount realized on each disposition [6] and determined that petitioner had unreported income from his real estate transactions during the years 1979, 1980, and 1981 in the respective amounts of $ 191,909, $ 165,005, and $ 120,000. [7]
*427 Prior to trial, however, respondent made various concessions, which are discussed later. Based on these concessions, respondent now contends that petitioner had unreported income from his real estate transactions during the years 1979, 1980, and 1981 in the respective amounts of $ 104,836, $ 104,566, and $ 14,150. Petitioner does not dispute that he was engaged in the trade or business of buying and selling real property nor that he failed to file tax returns for the years in issue. Rather, he contends that he did not realize a profit on each of the alleged transactions because he incurred various expenses which offset the amount realized in each transaction. This case initially involved the purchase and disposition of 14 properties by petitioner, and petitioner contends that he did not make a profit on any of them. He testified that the properties required various degrees of repair. Moreover, on disposition, he allegedly incurred typical seller's expenses such as title insurance, legal expenses, and commissions. However, petitioner did not present any business records, such as ledgers, logs, escrow documents, or bank records, maintained by him during the years in issue which would *428 corroborate his testimony. [8] Petitioner's testimony generally was vague, incoherent, and not credible. Finally, petitioner failed to present the testimony of any of the other parties involved in the various real estate transactions. Nevertheless, we recognize that, in many cases, some selling and fix-up expenses are incurred in disposing of real estate. Respondent has recognized this in conceding a 6-percent sales commission for some properties. Accordingly, using our best judgment and weighing heavily against petitioner, we will allow $ 1,000 for selling and fix-up expenses on several of the properties. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). *429 We will now discuss each property separately. A. 1979 Tax Year
[9]
1. 1429 South Bundy
On April 6, 1979, petitioner recorded a document dated February 1, 1979, entitled Individual Grant Deed in the Official Records, indicating that "Bernard Gross, a married man" acquired real property located at 1429 South Bundy, Los Angeles, California (hereinafter referred to as the South Bundy property), from Elvin Drake, Linus Drake, and Ethelyne Drake for a purchase price of $ 170,000. Simultaneously, a second document entitled Grant Deed dated March 19, 1979, was recorded in the Official Records indicating the transfer of the South Bundy property by "Bernard *430 Gross, and Rebecca Gross, husband and wife" to April May for $ 205,000. Based on these documents, respondent initially determined that petitioner realized a gain on the sale of the Bundy property in the amount of $ 35,000. However, prior to trial, respondent conceded that petitioner was entitled to an offset of $ 12,300 for a 6-percent sales commission, thereby resulting in a net gain in the amount of $ 22,700. In addition, we allow petitioner $ 1,000 in selling expenses. We also find that the South Bundy property constituted community property; therefore, only one-half of the realized gain is attributable to petitioner. Accordingly, we find that petitioner realized a gain in the amount of $ 10,850 on the sale of the South Bundy property. 2. 464 South Sycamore
On November 29, 1978, petitioner recorded a document entitled Grant Deed in the Official Records indicating that "Bernard Gross and Rebecca Gross, husband and wife as joint tenants" acquired real property located at 464 South Sycamore, Los Angeles, California (hereinafter referred to as the South Sycamore property), from Leo Brown and Associates, for a purchase price of $ 105,000. Thereafter, on May 8, 1979, a second *431 Grant Deed was recorded indicating that "Bernard Gross and Rebecca Gross, Husband and Wife" transferred the South Sycamore property to Chabiba, Inc., for $ 126,250. Initially, respondent determined that petitioner realized a gain on the sale of the Sycamore property of $ 21,250. However, prior to trial, respondent conceded that petitioner incurred a commission expense of $ 7,575, based on 6 percent of the sales price, resulting in a net gain in the amount of $ 13,675. We also allow petitioner $ 1,000 in selling expenses with regard to this property. However, as the property was held as joint tenants by petitioner and Rebecca Gross, petitioner had only a one-half interest in the property. Therefore, only one-half of the realized gain is attributable to petitioner. Accordingly, we find that petitioner realized a gain in the amount of $ 6,337.50 from the sale of the Sycamore property. 3. 528-530 North La Brea
On June 29, 1979, a document entitled Grant Deed was recorded in the Official Records indicating that "Bernard Gross, a married man" acquired real property located at 528-530 North La Brea, Los Angeles, California (hereinafter referred to as the North La Brea property), from *432 United California Bank as Trustee under the will of Zenda Colbert for a purchase price of $ 91,000. Immediately thereafter, on June 29, 1979, a second Grant Deed was recorded in the Official Records indicating that "Bernard Gross" transferred the North La Brea property to Andrew and Judith Friedman for a purchase price of $ 130,000. Thus, respondent initially determined that petitioner realized a gain on the sale of the North La Brea property in the amount of $ 39,000. However, prior to trial, respondent conceded that petitioner incurred a commission expense in the amount of 6 percent of the sales price, or $ 7,800, resulting in a net gain to petitioner in the amount of $ 31,200. Moreover, because the North La Brea property constituted community property, only one-half of the realized gain would be attributable to petitioner. Accordingly, we find that petitioner realized a gain in the amount of $ 15,600 from the sale of the North La Brea property. Petitioner testified that this property was to be used by him as an office in which he stored materials for repairing his properties. He further testified that he was paying rent to the new owner and that he expended funds repairing the *433 North La Brea property. However, petitioner's testimony was simply too vague to permit the Court to make any reasonable approximation of his alleged expenses. Accordingly, we do not allow the deduction of any Schedule C expenses in this connection. 4. 801 North June
On September 1, 1978, a document entitled Grant Deed was recorded in the Official Records indicating that "Bernard Gross and Rebecca Gross, husband and wife as joint tenants, Wolf Appel and Goldie Appel, [10] husband and wife as joint tenants all as joint tenants" acquired real property located at 801 North June, Los Angeles, California (hereinafter referred to as the North June property), from Jacob Langman for a purchase price of $ 90,000. Thereafter, on July 31, 1979, a second document entitled Individual Grant Deed was recorded indicating that "Bernard Gross and Rebecca Gross, husband and wife and Wolf Appel and Goldie Appel, husband and wife" sold the North June property to the Schreibers for $ 146,590. Thus, respondent determined that petitioner realized a gain on the sale of the one-half interest in the North June property in the amount of $ 28,295. However, respondent conceded that the selling parties incurred *434 a commission expense of 6 percent of the sales price of $ 8,795, resulting in a net gain in the amount of $ 23,897. However, the one-half interest was held by petitioner and Rebecca Gross as joint tenants, and, therefore, only one-half the gain on the disposition of their one-half interest in the North June property would be attributable to petitioner. Accordingly, we find that petitioner realized a gain in the amount of $ 11,948.50 from the sale of the North June property. Petitioner's contention that he never saw any of the profit from this transaction, because his in-laws kept whatever funds were involved, does not reduce the amount of gain he realized and must recognize. If retained by his in-laws, the funds may have been credited to a debt he owed them. He has failed to prove that he was not in receipt, actual or constructive, of this income. Moreover, although petitioner testified that this property needed repairs, he failed to substantiate any deductible expenses *435 in that respect. 5. 1751 Clearview
On August 2, 1979, a document entitled Grant Deed was recorded in the Official Records indicating that "Bernard Gross and Rebecca Gross, husband and wife" acquired real property located at 1751 Clearview, Los Angeles, California (hereinafter referred to as the Clearview property), from Marvin and Helen Leaf for a purchase price of $ 200,000. A Short Form Deed of Trust signed by the grantors and recorded on August 2, 1979, reflected that $ 190,000 was the amount of a promissory note given as part of the purchase price. Thereafter, on September 14, 1979, a second Grant Deed was recorded in the Official Records indicating that "Bernard Gross and Rebecca Gross, husband and wife" transferred an undivided one-half interest in the Clearview property to Arthur S. Israel & Co. (Israel & Co.). The amount of documentary transfer tax on this document is $ 20.20, indicating a value of $ 18,363.70. Respondent determined that the sale price was $ 113,364 (i.e., $ 18,364 plus one-half of the $ 190,00 promissory note) and that petitioner realized a gain on the sale of the one-half interest in the Clearview property in the amount of $ 13,364. Petitioner testified *436 that Israel & Co. was a real estate broker. There is no evidence as to what happened to this property subsequent to the transfer of the one-half interest to Israel & Co. and in particular to the one-half interest retained by the Grosses. After review of the record on this matter, we conclude that the substance of the 2 transactions described was that the Grosses acquired a one-half interest in the Clearview property from the Leafs, that Israel & Co. acquired the other one-half interest in the property from the Leafs, and that no gain or loss was realized by petitioner as a result of the September 14, 1979, grant deed. B. 1980 Tax Year
[11]
*437 1. 3772 Overland
On June 21, 1979, a document entitled Grant Deed was recorded in the Official Records indicating that "Bernard Gross, a married man as his sole and separate property" acquired real property located at 3722 Overland (lots 15 and 16), Los Angeles, California (hereinafter referred to as the Overland property), from Anton L. Ferfolia and Louise Ferfolia for a purchase price of $ 230,000. A Deed of Trust in the amount of $ 172,500 was executed in favor of the Ferfolias. By an Individual Grant Deed dated July 12, 1979, and recorded on October 12, 1979, Mr. and Mrs. George Arkin (the Arkins) and Mr. and Mrs. Milton Widelitz (the Widelitzes) acquired lot 14 adjacent to the Overland property for $ 160,000, of which $ 100,000 was apparently financed by deed of trust in favor of the seller. On October 4, 1979, a document entitled Long Form Deed of Trust and Assignment of Rents was recorded in the Official Records indicating that petitioner transferred a security interest in the Overland property to the Arkins and the Widelitzes in connection with a promissory note for $ 112,000. An unsigned and incomplete set of escrow instructions, dated July 3, 1979, indicates that only *438 $ 10,000 of the $ 112,000 was required to be deposited, and it is not evident from this record who received the $ 10,000 or whether any other funds actually changed hands. On or about April 24, 1980, a second document entitled Individual Grant Deed was recorded in the Official Records indicating that petitioner, the Arkins, and the Widelitzes transferred Lot 14 and the Overland property to Overland Plaza, a partnership. Documentary transfer tax on this document of $ 231 indicates a value of $ 210,000. To this amount, respondent added the liens and encumbrances of $ 172,500, $ 100,000, and $ 112,000 to arrive at a sale price of $ 594,500. Prior to trial, respondent conceded that petitioner owned only a one-third interest in the Overland property. Based on the recorded documents, respondent determined that the collective basis of petitioner, the Arkins, and the Widelitzes in the transferred properties was $ 390,000, and that petitioner realized a gain in the amount of $ 68,166 (which represents one-third of the realized gain). Another recorded document reflects that the Overland Plaza is a partnership whose partners are FLM Enterprises and Joseph Lifshin. Petitioner identified the *439 individuals whose initials made up the "FLM" of FLM Enterprises (not including himself) but was also of the belief that he had an interest in the venture which he would realize when it was ultimately sold, but which was "wiped out" in his bankruptcy. From the evidence presented, we cannot find that petitioner realized $ 68,166 or any other amount based upon these 1979 and 1980 documents. We think that petitioner, the Arkins, the Widelitzes, and others formed a joint venture with or under the name of Overland Plaza to develop the Overland property and that no gain or loss was realized in 1980. We sustain petitioner as to this property. 2. 4729 Lankershim
On February 11, 1980, a document entitled Grant Deed was recorded in the Official Records indicating that "Bernard Gross, a married man as his sole and separate property" acquired real property located at 4729 Lankershim, Los Angeles, California (hereinafter referred to as the Lankershim property), from Groh and Pavlick, a partnership, for a purchase price of $ 435,002. Thereafter, on August 19, 1980, a second Grant Deed was recorded in the Official Records indicating that "Bernard Gross, a married man as his sole and separate *440 property" transferred the Lankershim property to the Motion Picture Screen Cartoonists Society for $ 525,000. Thus, respondent initially determined that petitioner realized a gain on the sale in the amount of $ 89,998. However, prior to trial, respondent conceded that petitioner owned only a one-quarter interest in the Lankershim property. Moreover, the record reflects that $ 6,500 was withheld from the sale proceeds in order to deal with problems of evicting tenants. Based on this record, we find that petitioner realized a gain in the reduced amount of $ 20,874.50. 3. 130 North Gardner
On October 14, 1980, a document entitled Grant Deed was recorded in the Official Records indicating that "Arthur S. Israel & Company, a California Corporation, as to an undivided one-half interest and Bernard Gross and Rebecca Gross, husband and wife as Joint Tenants as to an undivided one-half interest" acquired real property located at 130 North Gardner, Los Angeles, California (hereinafter referred to as the North Gardner property), from Helen Charles for a purchase price of $ 200,000. Thereafter, on December 18, 1980, a second Grant Deed was recorded indicating that "Bernard Gross and Rebecca *441 Gross, husband and wife and Arthur S. Israel & Company, a California Corporation" sold the North Gardner property to Capac Corp. (hereinafter referred to as Capac), and the documentary transfer tax indicated a value of $ 95,000. At the time of the sale, there were liens and encumbrances on the property which totaled $ 160,000. Thus, respondent determined that Capac acquired the property subject to the existing encumbrances and that the sale price was $ 255,000. The record indicates that Capac paid for this property in part with two new notes totaling $ 79,700. Respondent thus inferred that $ 15,300 in new money passed from buyer to sellers. Subsequently, petitioner's interest in the North Gardner property was deeded back in petitioner's chapter 7 bankruptcy proceedings in lieu of foreclosure, and respondent concedes that petitioner did not realize a gain on the sale to Capac, other than the amount of actual cash received by petitioner at the time of the sale. Respondent further determined that the sellers received cash in the amount of $ 15,300, and, therefore, petitioner realized a gain in the amount of $ 7,650. Petitioner testified that he did not receive any of the new money, *442 if there was any, because it went to pay the broker's commission. The $ 15,300 amount is exactly 6 percent of $ 255,000. We believe petitioner and hold that he realized no gain on the sale of North Gardner to Capac. 4. 100 South La Brea
On August 29, 1980, a document entitled Individual Grant Deed was recorded in the Official records indicating that "Bernard Gross and Rebecca Gross, husband and wife as Joint Tenants to an undivided 50% interest and Arthur S. Israel & Company, a California Corporation as to an undivided 50% interest" acquired real property located at 100 South La Brea, Los Angeles, California (hereinafter referred to as the South La Brea property), from Howard Mead Little for a purchase price of $ 314,000, of which $ 313,750 was financed by two deeds of trust. Thereafter, on December 24, 1980, a second Grant Deed was recorded in the Official Records indicating that "Bernard Gross and Rebecca Gross and Arthur S. Israel and Co." transferred the South La Brea property to Capac. Documentary transfer tax was $ 16.50, which indicated a value, less liens and encumbrances, of $ 15,000. Thus respondent computed a sale value of $ 328,750 and determined a gain of $ 15,000, *443 one-half of which was attributed to petitioner. As with the North Gardner property, petitioner contends that any new money went to pay broker's commissions. The $ 15,000 amount is slightly less than 5 percent of $ 314,000. Under the circumstances presented herein, we agree with petitioner and hold that no gain or loss was realized by the sale to Capac of the South La Brea property. C. 1981 Tax Year
[12]
1. 314 North Formosa
On July 3, 1980, a document entitled Long Form Security (Installment) Land Contract With Power Of Sale (hereinafter referred to as a Long Form) was recorded in the Official Records indicating that "Bernard Gross and Rebecca Gross, husband and wife as joint tenants" acquired real property located at 314 North Formosa, Los *444 Angeles, California (hereinafter referred to as the North Formosa property), from James and Jeanne Salamon for a purchase price of $ 253,000. The terms of the purchase price were $ 25,300 down and $ 227,700 payable as follows: monthly installments of interest only (at 12 percent) for 1 year commencing August 3, 1980, monthly installments of $ 2,152 of principal and interest for 1 year, followed by a principal reduction payment of approximately $ 75,000, and a possible assumption of prior existing trust deeds. [13]
Thereafter, on January 29, 1981, a second Long Form was recorded in the Official Records indicating that "Bernard Gross and Rebecca Gross, husband and wife" transferred the North Formosa property to Capac for a purchase price of $ 310,000. The terms of this sale were zero downpayment, 12 monthly payments of interest only at 12-1/4 percent, and a complicated method for payment of the principal thereafter. Respondent *445 concluded that this transaction resulted in a gain to petitioner of $ 57,000. However, the original sellers, the Salamons, subsequently foreclosed on the property, and petitioner and Rebecca Gross lost their downpayment of $ 25,300. Thus, after offsetting the forfeited downpayment against the realized gain, respondent determined that petitioner and Rebecca Gross realized a gain in the amount of $ 31,700 of which $ 15,850 is attributable to petitioner. We cannot agree. Petitioner and his wife received no cash payments. Other than the contract itself, there is no evidence that any consideration was paid by Capac, and, under the facts presented to this Court, there is little, if any, evidence that the signature of the president of Capac had any value whatsoever. Accordingly, we hold that petitioner realized no gain on the land contract to Capac and that he realized a loss of $ 12,650 (one-half of $ 25,300) on the forfeiture of his downpayment to the Salamons. 2. 833 Gower
On August 14, 1980, a document entitled Grant Deed was recorded in the Official Records indicating that "Bernard Gross, a married man, as his sole and separate property" acquired real property located at 833 Gower, *446 Los Angeles, California (hereinafter referred to as the Gower property), from Jerry and Ruth Greenwald for a purchase price of $ 130,000, of which $ 100,000 was represented by a trust deed of even date. On January 12, 1981, another trust deed from petitioner was recorded, reflecting a security interest on the Gower property given by petitioner for $ 40,000. Thereafter, on January 13, 1981, a second Grant Deed was recorded in the Official Records indicating that "Bernard Gross, a married man, as his sole and separate property" transferred the Gower property to Capac. Documentary transfer tax indicated a value, less liens and encumbrances, of $ 100,000, and respondent concluded that the sale price was $ 240,000. Although the record reflects no documentation thereof, in addition to the existing encumbrances ($ 140,000), Capac allegedly paid petitioner the additional $ 100,000, consisting of $ 12,000 in cash and $ 88,000 in new notes. In determining the amount realized by petitioner, respondent considered only the $ 12,000 cash paid by Capac. Respondent has conceded that petitioner owned only a two-thirds interest in the Gower property, and, that, therefore, petitioner realized a gain *447 on the sale only in the amount of $ 8,000. Petitioner again stated that a broker's commission was paid, and $ 12,000 is exactly 5 percent of $ 240,000. For reasons stated earlier in connection with the North Gardner and South La Brea properties, we hold that petitioner did not realize any gain or loss in connection with the transfer of the Gower property to Capac. III. Interest Income
In the notice of deficiency respondent determined that petitioner received interest income in the respective amounts of $ 1,833 and $ 1,376 for 1979 and 1980. We note that other than petitioner's brief testimony that he did not receive any interest from the Deeds of Trust, discussed infra, petitioner offered no evidence with respect to this issue. A. South Sycamore Deed of Trust
Pursuant to the sale of the South Sycamore property by petitioner and Rebecca Gross, the parties thereto executed a Deed of Trust and Assignment of Rents (hereinafter referred to as the South Sycamore Deed of Trust) in the amount of $ 10,000, which document was filed in the Official Records on May 8, 1979. The terms of the South Sycamore Deed of Trust provided that petitioner and Rebecca Gross would receive *448 interest at a rate of 10 percent per annum, payable monthly beginning June 1979 and that the principal amount of the Deed of Trust, $ 10,000, was due in full 1 year from the date of endorsement. Based on the terms of the South Sycamore Deed of Trust, respondent determined that petitioner received interest income in 1979 and 1980 in the respective amounts of $ 583 and $ 417. However, the South Sycamore Deed of Trust was recorded as the joint property of petitioner and Rebecca Gross, and consequently only one-half of the interest income for each of the years is attributable to petitioner. Accordingly, based on this record, we find that petitioner had interest income from the South Sycamore Deed of Trust for 1979 and 1980 in the respective amounts of $ 291.50 and $ 208.50. B. Chillar Deed of Trust
Petitioner also held, as his sole and separate property a $ 16,250 Deed of Trust from Mr. and Mrs. Ram K. Chillar (hereinafter referred to as the Chillar Deed of Trust). The terms of the Chillar Deed of Trust stated that petitioner would receive annual interest of 8 percent, payable monthly, starting May 10, 1978, and that the principal was due May 12, 1980. Thus, respondent determined *449 that petitioner received interest income for 1979 and 1980 in the amounts of $ 1,300 and $ 541.67, respectively. Based on this record, we sustain respondent on this issue. IV. Forgiveness of Indebtedness Income
In the notice of deficiency respondent determined that petitioner had unreported income in the amount of $ 24,280 resulting from the foreclosure of condominium units which petitioner and Rebecca Gross owned. Petitioner contends that he did not have such income. On December 1, 1980, a Trust Deed was recorded in the Official Records which indicated that petitioner and Mrs. Gross conveyed certain property to Western Mutual Corp. as trustee for the benefit of Mr. & Mrs. Rick Hoover in connection with a $ 25,000 promissory note. Although respondent characterizes this document as a "third trust deed", there is nothing on the document to support this contention. Moreover, the property involved is not described on the document, except as "as per exhibit 'A' attached hereto and made a part hereof," which attachment was not included with the Court's exhibit. Also in the space reserved for the property description is a handwritten "#2, #5, #11". On December 1, 1981, several *450 Trustee's Deeds Upon Sale were recorded, reflecting that Title Insurance and Trust Co., as trustee under a deed of trust executed by petitioner and Rebecca Gross on September 23, 1980, had foreclosed upon certain condominiums located at 4370 Colfax Avenue and described as Units 2, 5, and 11. The grantee, one Phillip Hillman, successfully bid on the property for the amount of his unpaid debt. Respondent contends that these documents prove that petitioner's debt of $ 25,000 was therefore extinguished, resulting in forgiveness of indebtedness income. Respondent concedes that petitioner and Rebecca Gross lost the downpayments on the three units in the total amount of $ 720, petitioner's one-half being $ 360. However, respondent now contends that pursuant to section 61(a)(12) petitioner realized relief of indebtedness income in the amount of $ 12,140 (one-half of the amount of the extinguished debt less one-half of the lost downpayment). Respondent relies upon Cal. Civ. Proc. Code sec. 580b (West 1994) which provides: "No deficiency judgment shall lie in any event after a sale of real property * * * for failure of the purchaser to complete his or her contract of sale, or under a deed *451 of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of that real property". Petitioner has the burden of proof on this issue, and he has failed to disprove that he realized income of $ 12,500 (one-half of $ 25,000) from relief of indebtedness, less the loss of $ 360 on the downpayment. V. Section 6651(a) Additions to Tax
Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return unless it is shown that such failure was due to reasonable cause and not willful neglect. It is petitioner's burden to show that he filed his return timely or that reasonable cause existed for his failure to timely file his return. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Haden v. Commissioner, T.C. Memo. 1986-539; Carlin v. Commissioner, T.C. Memo. 1981-694. Petitioner does not dispute that he failed to file his 1979, 1980, and 1981 tax returns. Moreover, petitioner has failed to offer any evidence that such failure was due to reasonable cause and not willful neglect. Accordingly, we sustain respondent on this issue. *452 VI. Section 6653 Additions to Tax
Section 6653(a) for 1979 and 1980 and section 6653(a)(1) and (2) for 1981 imposes additions to tax for negligence or intentional disregard of rules or regulations. Negligence under section 6653(a) is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner also had the burden of proof on this issue. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). We conclude on this record that petitioner had substantial income which he failed to report, that he failed to timely file tax returns, and that the underpayments of tax were due to negligence. See Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Accordingly, we sustain respondent on this issue. VII. Section 6654(a)
Section 6654(a) imposes an addition to tax for failure to pay estimated tax. This addition to tax is mandatory unless a taxpayer is able to qualify under the specific exceptions set forth in section 6654(e). *453 Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Accordingly, unless the Rule 155 computations demonstrate that one of the section 6654(e) exceptions applies, we sustain respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
1. Plus 50 percent of the interest due on the entire deficiency.↩
2. The record does not contain any evidence of tax returns filed by Rebecca Gross nor the contents thereof.↩
3. These California Code citations are to the provisions as numbered and in effect during the years at issue. The cited sections have since been renumbered and now appear as Cal. Fam. Code secs. 751 and 760↩ (West 1994).
4. Other than petitioner's vague, self-serving statement, there is no evidence supporting any exemption claim. We do not consider the claim properly raised, but, if properly raised, it must fail for insufficient evidence.↩
5. In California, the documentary transfer tax is "fifty-five cents ($ 0.55) for each five hundred dollars ($ 500) or fractional part thereof." Cal. Rev. & Tax. Code sec. 11911↩ (West 1994). As detailed in the body of the opinion, where the purchase price of a property was not stated on the deed, respondent determined a purchase price from the amount shown as paid for the documentary transfer tax by using the ratio of 55 cents per $ 500. Where the tax was not computed on the full value of the transfer because of existing liens or encumbrances, respondent added the amounts of the liens or encumbrances to the computation to arrive at an inferred transfer price.
6. Pursuant to sec. 1001(a), the gain from the sale or other disposition of property equals the excess of "the amount realized" over the property's adjusted basis. The "amount realized" from a disposition of property generally includes the amount of liabilities from which the transferor is discharged as a result of such disposition. Crane v. Commissioner, 331 U.S. 1, 14↩ (1947).
7. Where a taxpayer fails to maintain sufficient business records to determine correct tax liability as required by sec. 6001, the Commissioner may, pursuant to sec. 446, reconstruct income in accordance with a method which clearly reflects the taxpayer's income. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). This may include the use of indirect methods. Holland v. United States, 348 U.S. 121 (1954). Although the Commissioner's reconstruction need not be exact, it must be "reasonable in light of all surrounding facts and circumstances". Schroeder v. Commissioner, 40 T.C. 30, 33↩ (1963). In this case we believe that the use of documentary transfer tax information constitutes a reasonable method to reconstruct income.
8. Petitioner went into bankruptcy in 1982. Allegedly, all of his records were turned over to his attorney and/or the trustee in bankruptcy. Upon termination of the bankruptcy proceedings, no records were returned to petitioner, and he has alleged that any such records have since been lost or destroyed. Other than resorting to recorded documents, petitioner has made little attempt to reconstruct those records.↩
9. Respondent determined in the notice of deficiency that the disposition of real property located at 3772 Overland, Los Angeles, California, occurred in 1979. However, based on the evidence discovered during preparation for trial, respondent now recognizes that the disposition actually occurred in 1980, and we will discuss that property in connection with 1980.↩
10. The Appels are the parents of Rebecca Gross.↩
11. Prior to trial, respondent conceded that petitioner did not realize a gain from the sale of property located at Leland Way. Additionally, in the notice of deficiency, respondent determined that petitioner realized a gain from the sale of real property located at 314 North Formosa in 1980. However, based on evidence obtained during the preparation of the trial, respondent now contends, and we agree, that the transaction occurred in 1981, and we will discuss that property infra↩.
12. Initially respondent determined that petitioner realized a gain of $ 10,000 on the disposition of property known as Sparr Heights. Respondent now concedes that petitioner had no gain, but actually realized a loss of one-half of $ 19,400 or $ 9,700 in regard thereto.↩
13. The Salamons were also vendees under a land contract which had not yet been satisfied.↩