LAURA TODD SCHROEDER et al., appellees, v. FLOYD G. TODD et al., appellants.

No. 49285.

(Reported in 86 N.W.2d 101)

NOVEMBER 12, 1957.

Everett G. Scott, of West Union, for appellants.

Larson & Carr, of Charles City, and John R. Cronin, of Nashua, for appellees.

PETERSON, J.—On July 2, 1956, plaintiffs filed petition in Chickasaw County District Court for partition of a residence property in Nashua. Original notice was served on July 23 on all defendants. On July 5, 1956, Floyd G. and Thomas C. Todd, together with Nellie Todd, wife of Thomas, and Floyd Todd, trustee, filed petition against plaintiffs herein in Floyd County District Court for partition of 670 acres located in said county. The residence property in Nashua was not included in the petition. Original notices had been served either by personal service or proper substituted service on July 3 on following defendants: Marion Todd; Dorothy Todd; Laura Todd Schroeder and her husband, Lawrence Schroeder; Marion Hanneman and her husband, Paul Hanneman. Defendants Elizabeth Todd Bigelow and her husband, Ralph Bigelow, lived in Wisconsin. Original notice was served on them by publication after filing of proper affidavit of nonresidence and mailing notice as provided by rule 60.1, Rules of Civil Procedure. On July 21, after service of original notice was complete as to all defendants describing only the farms located in Floyd County, plaintiffs filed amendment to petition including the Nashua property. Defendants filed appearance in Floyd County case on September 18, 1956. In the petition in case at bar plaintiffs alleged the three daughters of Harry Todd, deceased, and defendants Floyd G. Todd and Thomas C. Todd were each the owner of an undivided one-fifth interest in the Nashua property. After all evidence had been offered plaintiffs amended their petition alleging ownership as follows: defendant Floyd G. Todd, one third; defendant Thomas C. Todd, one third; plaintiffs Laura Todd Schroeder, one ninth; Dorothy Todd, one ninth; Elizabeth Todd Bigelow, one ninth. Defendants alleged in their answer that this case should be abated because the same issues were involved in the partition action in Floyd County as between the same parties, and service of original notice had been completed first in the Floyd County case. They also raised question of proportion of ownership. Plaintiffs filed reply denying right of abatement.

The trial court denied defendants' plea of abatement and entered decree of partition holding the three daughters of Harry Todd, plaintiffs herein, each to be the owner of an undivided one-ninth interest, or a total of one-third interest, and defendant Floyd G. Todd, owner of one-third interest and defendant Thomas C. Todd, owner of one-third interest. From this decree defendants have appealed.

There are only two questions to be decided: 1. Were defendants entitled to abatement of this case in view of the pending partition action in Floyd County? 2. Is the trial court's decree correct as to proportion of ownership in the property involved?

I. As to the first question the issue is restricted to the somewhat narrow, but also new, question of whether the filing of amendment in the Floyd County case as to the Nashua property, after completion of service of original notice, created prior commencement of action as to such property.

The fundamental basis for abatement of an action is the pendency of another action with identical parties, causes of action, issues, relief prayed, and with prior filing in accordance with statutes or decisions of jurisdiction involved. 1 C. J. S., Abatement and Revival, sections 1 to 105; 1 Am. Jur., Abatement and Revival, sections 1 to 75. There are slight exceptions not applicable in this case. Van Vleck v. Anderson, 136 Iowa 366, 113 N.W. 853.

In the absence of inclusion of Nashua property in the petition and original notices in Floyd County partition action the only manner in which that court could secure jurisdiction of the subject matter and parties as to this property was through the appearance of defendants in the case. They filed appearance September 18, 1956. Since no service of original notice as to Nashua property was ever made in Floyd County case, the appearance date becomes the substitute therefor as to date of commencement of action. Original notices were served as to Nashua property in the Chickasaw County partition action on July 23, 1956. This case was therefore first in assuming jurisdiction of Nashua property, and the decision of the trial court denying abatement is correct.

Appellees allege rule 235, R. C. P., controls the abatement question. The rule is as follows: "The judgment may award any relief consistent with the petition and embraced in its issues; but unless the defaulting party has appeared, it cannot exceed what is demanded against him in the petition *as limited by the original notice.*" (Emphasis ours.) According to this rule if defendants (plaintiffs herein) had not appeared in the Floyd County action plaintiffs could not have included the Nashua property in partition decree. The following statement in 1 Am. Jur., supra, section 28, is pertinent:

"The ultimate inquiry seems to be whether the judgment in the first, if one is rendered, would be conclusive upon the parties in respect of the matters involved in the second. In other words, if a judgment in the first action would bar the other action, then the subsequent action will abate; but if such judgment would constitute no bar to the action, there is nothing to prevent the latter action from being maintained."

In the absence of appearance by defendants, if the method of pleading cannot serve as a proper basis for decree in case of default, it cannot form a proper foundation for abatement. While the abatement question is settled by our previous ruling, we approve this additional basis for the trial court's decree.

II. Appellants complain about the proportion of ownership in.the property as established by the trial court. The deed conveying the property to the parties in this action was a warranty deed to the three children of Harry Todd, and defendants Floyd and Thomas Todd, without any statement as to proportionate ownership of grantees. This would presume one-fifth ownership in each. However, it was established by the evidence that the property was purchased with Todd Brothers partnership funds. The purchase price of $8250 was paid $1000 down and balance before delivery of deed.

Floyd G. Todd testified: "Q. And where did this $1000 come from? A. From the bank account that we had deposit under. Q. What bank account are you referring to? A. Nashua bank. Q. What account are you referring to in that Nashua bank? A. The account of the company. Q. What company? A. The account that we did business on. Q. Well, by the ac-

count that you did business on, what account do you have reference to? A. The account that was always carried in the Nashua bank. Q. Under what name? A. Name of Todd Brothers. Q. Who are the owners of that account? A. The three children and my brother and myself. Q. What do you mean by the three children? A. My brother's three children. Q. Would you give their names? A. Laura and Dorothy and Beth. Q. And by these three children are you referring to the plaintiffs in this action? A. Yes. * * * Q. Now, will you tell the Court where the $4000 came from that was paid on April 1, 1954? A. It came out of the joint bank account that the first.$1000 came out. Q. Came out of the Todd Brothers bank account? A. Yes, sir. Q. And the owners of that account are yourself, your brother Tom and each of the three plaintiffs in this action? A. Yes, sir. After this $5000 was paid, there remained a balance due on this contract of $3250, which was paid from the proceeds of bonds owned jointly by the Todd Brothers partnership."

Floyd also testified: "As manager of the Todd Brothers partnership I saw that income tax returns were filed on behalf of the partnership * * * for tax purposes these showed the distribution of income one third to myself, one third to my brother Thomas and one third to the heirs of Harry's estate, to Marion and her daughters. This has been true of each return filed on behalf of the partnership since my brother died."

If property is purchased with partnership funds, ownership therein vests in the partners in proportion to their interest in the partnership account from which the purchase price was paid. Hull v. Padgett, 207 Iowa 430, 223 N.W. 154; Sinclair v. Allender, 238 Iowa 212, 221, 26 N.W.2d 320, 326. Judge Bliss significantly stated in Sinclair v. Allender, supra:

"There is no question about the well-established principle of equity, quaintly but succinctly expressed, in Claussen v. La Franz, 1 (Cole) Iowa 226, 234, 'that the land is *his*, whose the money was.' This court has often repeated the thought. Sullivan v. McLenans, 2 (Clarke) Iowa 437, 65 Am. Dec. 780; Sunderland v. Sunderland, supra, 19 Iowa 325, 328; Amidon v. Snouffer, supra, 139 Iowa 159, 161, 117 N.W. 44; Cotton v. Wood, 25 Iowa 43, 46; Andrews v. Oxley, 38 Iowa 578, 580."

■ Proof of unequal contribution to purchase price of realty by grantees, in conveyance to purchasers of tenancy in common, overcomes presumption that they take equal shares and raises presumption they intended to share in proportion to amounts contributed by each. Shelangowski v. Schrack, 162 Iowa 176, 143 N.W. 1081; In re Estate of Morrison, 220 Iowa 42, 261 N.W. 436; Williams v. Monzingo, 235 Iowa 434, 442, 16 N.W.2d 619, 622, 156 A. L. R. 508.

In Williams v. Monzingo, supra, we stated: "To summarize the holdings in the two previously cited cases, we find the rule to be that where a conveyance to purchasers of a tenancy in common is silent these purchasers are presumed to take equal shares. However, this presumption is a rebuttable one and does not prevent proof from being introduced that the respective holdings and the interests of the parties are unequal. In a showing of unequal contribution, in the absence of further proof, the prior presumption is overcome and another presumption arises; that is, that the parties intended to share in proportion to the amount contributed by each to the purchase price."

■ There is adequate basis in pleadings and evidence to sustain the decision of the trial court dividing the property one third to Harry's three children; one third to Floyd and one third to Thomas. The matters supporting the decision are: 1. In the pleadings in partition action in Floyd County, Floyd G. Todd and Thomas C. Todd alleged ownership in the proportion as fixed by the court. 2. In plaintiffs' amendment to petition in this case, after submission of the evidence, plaintiffs alleged such proportion of ownership. 3. In accordance with the evidence of Floyd G. Todd, defendant, the funds from which the property was purchased belonged to him, one third, his brother Thomas, one third, and the three children of Harry Todd, deceased, one third. These funds were the proceeds of income from the partnership farms. 4. Income tax returns were filed, and income taxes paid in same proportion as ownership established by the court.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.