

# Missouri Court of Appeals

## Southern District

### Division One

JOHNNY WOOD, )
)
      Appellant, )
)
  vs. ) No. SD33340
)
RUSSCELL PAVLIN, as Trustee of ) FILED: March 31, 2015
The Charles Russell Wood R/L/T/A, )
dated 01/30/06, )
)
      Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF DOUGLAS COUNTY

Honorable R. Craig Carter, Judge

## AFFIRMED

In 1991, Mr. and Mrs. Wood effectively gift-deeded a 266-acre farm to their sons, Johnny and Russell, as joint tenants with right of survivorship. Five months before Russell died in 2011, he transferred his interest into his revocable trust without notice to Johnny.

Johnny sought judicial relief in 2013, alleging Russell's transfer was ineffective and that Johnny owned the whole farm as surviving joint tenant. Alternatively, if the transfer was effective, Johnny sought half the farm's value from

Russell's successor trustee on an unjust enrichment theory.[1]

The trial court dismissed for failure to state a claim. An amended petition likewise was dismissed with prejudice. This appeal follows.

## Claim on Appeal / Standard of Review

Johnny summarizes his core appellate assertions in one sentence:

> Missouri should expressly protect a joint tenant's right of survivorship against the unconsented, unilateral action of a cotenant.

He acknowledges cases leaning against his position, but urges that he pleaded "a cause of action entitled to adoption in Missouri."[2]

We review *de novo* (***Ward v. West County Motor Co.***, 403 S.W.3d 82, 84 (Mo. banc 2013)) to "determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in [this] case." ***Nazeri v. Missouri Valley College***, 860 S.W.2d 303, 306 (Mo. banc 1993).

## The Right to Sever Joint Tenancies

"Joint tenancy is based on the theory that the tenants share one undivided estate, with the distinctive characteristic of the right of survivorship." ***Remax of***

---

[1] The unjust enrichment claim does not allege that Johnny paid money, made improvements, or otherwise contributed to the property. It merely asserts that, but for Russell's transfer, Johnny could have received twice as much farm after Russell died.

[2] We quote Johnny's sole point in its entirety:

> The trial court erred in dismissing plaintiff's amended petition, because the petition stated a cause of action entitled to adoption in Missouri, in that a real estate joint tenant's conveyance of his joint tenancy interest to his own revocable living trust, without partition action, consent of his co-joint tenant by common gift, or compensation for the loss of co-tenant's right of survivorship, unjustly enriches the trust beneficiaries where no innocent third party interests have attached.

***Blue Springs v. Vajda & Co.,*** 708 S.W.2d 804, 806 (Mo.App. 1986). Such tenancies may be severed by one co-tenant's conveyance, which "destroys the joint tenancy and thereby destroys the right of survivorship." ***Johnson v. Woodard***, 356 S.W.2d 526, 528 (Mo.App. 1962).

As Johnny acknowledges, Missouri has recognized this right to sever since before the Civil War. *See* ***Gibson v. Zimmerman***, 12 Mo. 385, 388 (1849) (non-spousal joint tenancy could be severed and survivorship defeated at the will of either co-owner by conveyance of his interest). "As therefore a joint tenancy of this nature may be destroyed at the pleasure of either tenants [*sic*] ...." ***Id***.

A right to sever also is our national norm. "Any joint tenant may unilaterally sever his or her joint tenancy interest, and the consent of the other tenants to the severance or termination is not required. Therefore, a joint tenant has the absolute right to terminate a joint tenancy unilaterally." 48A C.J.S. *Joint Tenancy* § 49. "It is not necessary that consent to the termination of a joint tenancy be obtained from the other joint tenants." 2 Tiffany, Real Property § 425 (3d ed. Cum. Supp. 2014-15).

## Johnny's Proposals for Change

Johnny sums up his various arguments in alternative requests for appellate relief which we consider in reverse order.

### *Option II*

As the broader of his proposals, Johnny urges us to "follow Michigan," that "the time has come for our courts to connect the dots, fill the gaps, and rectify the unjust discrimination against joint tenancies created by deed rather than by will." He refers to Michigan's seemingly unique recognition of "two forms of joint tenancies.

3

The first is of the type typically recognized in various jurisdictions." ***Albro v. Allen***, 454 N.W.2d 85, 87 (Mich. 1990). A Michigan commentator speaks to the second type, the one Johnny presses upon us:

> Few errors in conveyancing in Michigan are as common as the attempt to create a traditional joint tenancy with a conveyance to two or more people "as joint tenants with right of survivorship." The resulting interest is not a traditional joint tenancy, but rather a joint life estate with alternative contingent remainders that are indestructible by any unilateral action of one of the cotenants.

Byron D. Cooper, *Continuing Problems with Michigan's Joint Tenancy "With Right of Survivorship,"* 78 Mich. B.J. 966, 966 (1999).[3] To illustrate an apparently "widespread" problem, the author surveyed recorded Michigan deeds selected at random and found it "difficult to believe that even a substantial number of those" were actually meant to have created the type of joint tenancy they did. ***Id***.

"The Michigan doctrine clearly creates traps for the unwary." ***Id***. at 968. Even if this court *could* follow Michigan's lead, we would not do so.

### *Option I*

More simply, according to Johnny, this court could

> hold[] that the conveyance of a noncontributing joint tenant's interest to a self-controlled living trust or straw party acting under his own direction, absent the agreement of his co-tenants with right of survivorship under a common grant from common ancestors,

---

[3] Under this second type of Michigan joint tenancy:

> A and B can sever and partition the life estate and they can alienate the contingent remainders, but the owner of the fee will ultimately depend on which of the *original* grantees survives the other. If A conveys all his interest to C and B conveys all her interest to D, and A then dies before B, D will own the fee and C will have nothing.

***Id***.

4

shall remain subject to the cotenants' right(s) of survivorship unless otherwise ordered by the court in a partition or unjust enrichment action, upon payment of such consideration as the court shall determine.

A key flaw of this proposal is "the uncertainty it introduces into joint tenancy titles. Once title to property has been held in joint tenancy, the prospective purchaser of a severed interest in that property will be unable to determine from the record title whether the severance deed is valid." Samuel M. Fetters, *An Invitation to Commit Fraud: Secret Destruction of Joint Tenant Survivorship Rights*, 55 Fordham L. Rev. 173, 197 (1986) (hereinafter "Fetters").[4] Conditions such as Johnny proposes "would render the record extremely questionable whenever a severed joint tenancy appears." **Carmack v. Place**, 535 P.2d 197, 199 (Colo. 1975).

Other issues include but are not limited to these:

- *Requiring consideration to other joint tenant(s)* – This restrains alienation. Who determines the consideration? When? How much? Further, who really *knows* who will die last? Seemingly healthy persons can die suddenly and unexpectedly.

- *Requiring judicial action to effectuate severance* – Another clog on alienation. Why allow most joint tenants to sever by conveyance as at common law, but not these? How can joint tenancy continue if unity of title is broken? How can prospective buyers know from the title record if (using Johnny's terms) a joint-tenant grantor was "noncontributing" or that a grantee was a "straw party acting under [grantor] direction" or a "self-controlled" trust?

- *Conveyance into living trust* – If a joint tenant can freely convey his interest to a third party, why could he not transfer it to his revocable trust, a common estate planning tool? See **Reiss v. Reiss**, 114 P.2d 718, 722 (Cal.App. 1941) (transfer of joint tenant's interest to a trust for her benefit severed the joint tenancy).

---

[4] Fetters focuses specifically on secret spousal severance transactions (*see **id**.* at 175-76, 179-81), a "fraud" plainly not at issue here.

Such concerns lead us to reject Johnny's proposed change in law. We perceive little or "no problem with the law of joint tenancy in its maximization of flexibility in survivorship rights. It is a form of property co-ownership that assures survivorship rights and, at the same time, allows for severability." *Fetters*, *supra*, at 197. "Severability is the 'escape hatch' available to each joint tenant. Whether he does or does not avail himself of his survivorship right is a matter of choice. A formula for reform that in any way impairs or indirectly suppresses those rights should be avoided." *Id*. "Furthermore, it is neither wrong nor immoral for a joint tenant who desires to terminate survivorship rights to do so without first obtaining the consent of the other joint tenant," and "[b]ecause the interest of a joint tenant is a present interest in fee simple, it is not subject to a valid restraint on its alienation." *Id*. at 178-79.

## Conclusion

Johnny's disappointment does not translate into a recognized cause of action or justify creation of a new one. We affirm the judgment of dismissal. *Nazeri*, 860 S.W.2d at 306.

DANIEL E. SCOTT, J., — OPINION AUTHOR

JEFFREY W. BATES, J. — CONCURS

WILLIAM W. FRANCIS, P.J./C.J. — CONCURS