# IN THE SUPREME COURT OF IOWA

No. 21–0556

Submitted December 14, 2022—Filed January 27, 2023

**RICHARD GROUT** as Trustee of the **HELEN SCHARDEIN 2018 REVOCABLE TRUST,**

Appellee,

vs.

**DAN R. SICKELS,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Ringgold County, Michael Jacobsen, Judge.

A former cotenant of real property seeks further review of a court appeals decision affirming a district court order awarding the entire net proceeds from the sale of that property to the other former cotenant. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of this case.

David J. Hellstern (argued) and J. Mason Bump (until withdrawal) of Sullivan & Ward, P.C., West Des Moines, for appellant.

Douglas D. Daggett (argued) of Douglas D. Daggett, P.C., Creston, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

"The property by what it is should go, not by the title." William Shakespeare, *All's Well That Ends Well* act II, sc. 3, l. 140–41. Today's case tests that proposition. It is a case about one form of property ownership, a joint tenancy with right of survivorship. In the spring of 2014, a woman in her nineties purchased a lakeside lot and put it in joint tenancy with a man who was providing various services for her. This woman, notably, had devoted her career to real estate. Four and a half years later, in the fall of 2018, the woman suffered a serious stroke. Her nephew thereupon assisted her in creating a revocable trust. She transferred all her real and personal property, including her interest in the lot, into the revocable trust.

About five months later, in the spring of 2019, the woman died. The lakeside lot was sold, and disputes have arisen between the trust and the man who had provided services as to how the sale proceeds should be divided.

The man contends that he is entitled to all of the sale proceeds because the joint tenancy continued until the woman's death and he is her survivor. The trust counters that the joint tenancy was severed when the woman transferred her interest in the lot to the trust. The trust further contends that it is entitled to all of the proceeds, not merely half, because the woman put in the funds to purchase the lot and paid certain expenses on it. The man responds that even if he is not entitled to all the proceeds because the joint tenancy was severed, he

should receive half of them. Following a one-day trial, the district court awarded all the sale proceeds to the trust, and the court of appeals later affirmed.

On further review, we find that no Shakespearean dilemma has arisen here. Two separate documented transactions occurred—in 2014 and 2018—and we conclude that full effect should be given to both of them. There is no need to choose between "what it is" and "the title."

Giving the man *all* the proceeds from the sale of the lot—as if he continued to have joint tenancy with right of survivorship with the woman after 2018—would negate the 2018 transaction. That is not legally acceptable. Likewise, giving the trust *all* the proceeds from the sale of the lot—as if the woman had not purchased the lot in 2014 to be jointly owned by herself and the man—would negate the 2014 transaction. That is not legally acceptable, either. Therefore, we affirm in part and reverse in part the judgment of the district court and the decision of the court of appeals. Specifically, we hold that the net proceeds from the sale of the lot should be divided equally between the man and the trust, after giving the trust credit for certain expenses it paid during the course of the joint tenancy.

**II. Facts and Procedural History.**

Helen Schardein was a lifelong resident of Mount Ayr who passed away on March 30, 2019, at the age of 98. During her lifetime, Schardein worked in real estate as a broker and as the owner of an abstracting company. She also accumulated real property including her own residence, rental properties in Mount Ayr, a vacation home in Florida, a property being purchased by Dan

Sickels on contract, and a lot fronting on Sun Valley Lake that she owned in joint tenancy with Sickels. Additionally, at her death, Schardein had investment accounts totaling about half a million dollars and other personal property.

Schardein's husband predeceased her by many years, and the couple had no children. Schardein had a younger sister, however, who lived in California. Her sister's son, Richard Grout, Jr., lived in Oregon. Grout would visit Iowa and stay with Schardein about once a year.

Sickels moved to Mount Ayr in 2012. He met Schardein when he rented a place to live from her. He later agreed to buy that house from her on contract. Sickels did handyman work on Schardein's rental properties. At first he billed her; then he stopped doing so. Sickels also drove Schardein around to do shopping and other errands because Schardein had macular degeneration and was unable to drive herself.

Over time, Sickels became Schardein's travel companion. They took trips to Florida together, and eventually Schardein bought a condominium on the beach in Pensacola. They would visit that condominium in the winter, and Schardein rented it out at other times.

In 2014, Schardein purchased a lot on Sun Valley Lake (the Lake Lot) for $85,000 cash. She arranged that the property be deeded to herself and Sickels as joint tenants with right of survivorship. As noted by the district court, Schardein was "was quite aware of the legal consequences of such a deed from her experience as an abstractor." The real estate broker who handled the

transaction testified that she prepared the deed that way according to Schardein's instructions:

> And I said, "Now, Helen, you understand that it goes automatically to the other party if something happens to either of you?"
>
> And she said, "Yes."
>
> And I said, "So that's the way you want it prepared?"
>
> And she said, "Yes."
>
> So that's why I had it prepared.

Sickels maintained that Schardein decided to make him a joint tenant in return for all that he was doing for her. As he put it, "[S]he . . . had expressed to me that she wanted to do something for me but she didn't want to rewrite her will . . . ." Additionally, by virtue of this ownership interest, Sickels was able to obtain a boat permit for the lake. This enabled him to fish on the lake, and Schardein would join him in the boat. A trailer on the Lake Lot was also jointly titled in the names of Schardein and Sickels.

Schardein paid the property taxes and the association dues on the Lake Lot. The record indicates that each party paid for insurance on the property. Schardein paid for the utilities and mowing.

Witnesses agreed that Schardein retained her mental acuity until late October 2018, when she suffered a serious stroke. After that, Schardein became unable to speak or move very well. She was hospitalized in Des Moines and then transferred to a rehabilitation facility in West Des Moines.

Shortly after Schardein suffered the stroke, Grout flew to Des Moines to see his aunt. On November 13, while she was in the rehabilitation facility, Schardein, with the assistance of others, executed a general power of attorney in favor of Grout and a declaration of trust. Schardein was unable to physically read or sign the documents. They were read to her and signed by the spouse of attorney Douglas Daggett at Schardein's direction. Attorney Daggett notarized both documents. Two witnesses also signed.

The declaration of trust established the Helen Schardein 2018 Revocable Trust (Trust). The Trust was to be used for Schardein's benefit during her lifetime, and upon her death its assets were to be distributed in accordance with her 2005 will. Under that will, 35% of Schardein's assets were to go to Grout and his sister, 35% to the nieces and nephews of Schardein's late husband, 20% to certain charitable organizations, and the remaining 10% to other individuals. The trust declaration identified both real property and personal property that was being transferred into the trust. The list of real property included Schardein's home, the Florida vacation home, Sickels's home ("subject to contract"), other property, and the Lake Lot.

Specifically, the declaration of trust stated,

> I, Helen Schardein, declare, publish and acknowledge that I hereby assign, convey, transfer and deliver to Iowa State Savings Bank of Creston, Iowa, as Trustee of the Helen Schardein 2018 Trust, all of my real estate and personal property, including, but not limited to, the property listed below . . . as the trust estate:

> 1. See Attachment "A" for the listing of all real estate which is or will become part of the trust estate. [1]

Utilizing the power of attorney he had been given, Grout that same day executed a warranty deed conveying "[a]ll of [Schardein's] undivided interest in and to [the Lake Lot]" to the Trust. The deed recited that it was "given for estate planning purposes." It also contained preprinted warranty language that the "Grantors hereby covenant with grantees, and successors in interest, that grantors hold the real estate in fee simple."

In December, Schardein moved into an assisted living facility in Mount Ayr. Sickels continued to see her there until the family barred further contact. As noted, Schardein died on March 30, 2019. After her death, Sickels (who was at that time unaware of the Trust) filed an affidavit of surviving joint tenant and listed the Lake Lot for sale. The property eventually sold for $80,000. During the title review, the warranty deed transferring Schardein's interest in the property to the Trust showed up. At this point, all parties agreed that the sale should go forward with the proceeds placed in escrow pending resolution of their disputes.

At the time of Schardein's death, Sickels was four and a half years delinquent on his contract payments to her on his house. Sickels claims that he had a verbal commitment from Schardein to forgive that balance, but he ended up paying off the full balance due in the fall of 2019.

On May 20, 2020, Grout filed a petition in the Ringgold County District Court for partition of the Lake Lot, naming Sickels as defendant. Grout sought

---

[1]Grout later took over from the bank as trustee because of disagreements with the bank over how the financial assets were being managed.

not only partition, but an award of all the net sale proceeds on the ground that Schardein had provided all of the monetary consideration for the Lake Lot purchase. Sickels answered, and after cross-motions for summary judgment had been filed and denied, the case proceeded to trial on March 3, 2021.

The district court characterized the relevant issues as twofold:

1. Was the joint tenancy severed by the warranty deed transferring the Lake property to the Helen Schardein 2018 Revocable Trust?

2. If joint tenancy was severed what amount of the proceeds should be awarded to the Helen Schardein 2018 Revocable Trust?

In its written ruling, the district court concluded that the 2018 transfer of Schardein's interest into the Trust had severed the 2014 joint tenancy. As the court put it,

The intent to sever the joint tenancy can be gleaned from the Revocable Trust Document in Section 1 where Helen assigned, conveyed, transferred and delivered to the trustee all of her real estate. The intent was effectuated by the valid Warranty Deed signed by Mr. Grout as Attorney in Fact.

Turning to the second issue, the district court found that the Trust was entitled to 100% of the net sale proceeds. It reasoned that when a partition occurs, there may be equitable adjustments to reimburse parties for their contributions. The court elaborated,

Helen provided all of the capital contribution for the purchase of the Lake Property. Mr. Sickels admitted that he did not provide any of the purchase price. Further, Mr. Sickels admitted that Helen or the Revocable Trust paid all of the ongoing expenses such as property taxes, insurance, and association dues. Further, maintenance of the property and mowing, were hired out and not performed by Mr. Sickels. While it is obvious that Helen agreed to take title with Mr. Sickels as joint tenants at the time of purchase due to his companionship and the handyman and driving services

he performed for Helen, Dan didn't contribute anything financially to the Lake[] Property. Therefore, the Helen Schardein 2018 Revocable Trust is entitled to all of the proceeds from the sale . . . .

Sickels appealed, and we transferred the case to the court of appeals. That court affirmed the district court's ruling, essentially agreeing with the prior reasoning. We granted Sickels's application for further review.

### III. Standard of Review.

An action to partition property is an equitable proceeding. Iowa Code § 651.2 (2020) ("Property shall be partitioned by equitable proceedings."). We therefore apply a de novo standard of review. Iowa R. App. P. 6.907; *see McNaughton v. Chartier*, 977 N.W.2d 1, 8 (Iowa 2022). We give weight to the district court's fact-findings, especially as to credibility of witnesses, but are not bound by them.

### IV. Analysis.

**A. Did Schardein's Transfer of Her Interest into the Trust Sever the Joint Tenancy?** The first issue is whether the 2018 transfer of Schardein's interest in the Lake Lot into the Trust severed the joint tenancy. Here we believe the district court and the court of appeals came to the right conclusion.

In *In re Estate of Johnson*, we adopted an intent-based test for determining whether a joint tenancy has been created, severed, or terminated. 739 N.W.2d 493, 497–99 (Iowa 2007). Yet we made it clear that it was not an open-ended intent-based test. *Id.* Rather:

> [I]t seems fundamental that intent must be derived from an instrument effectuating the intent to sever the joint tenancy. Thus, we begin with the premise that intent unaccompanied by some

> action or instrument sufficient to corroborate and give effect to that intent will not create, sever, or terminate a joint tenancy.

*Id.* at 498–99.

One commentator has questioned the extent to which *Johnson* really changed prior law. *See* N. William Hines, *Joint Tenancies in Iowa Today*, 98 Iowa L. Rev. 1233, 1255–57 (2013). That commentator gave the example of a contract for the sale of land signed by all the joint tenants as the "rare" case where the intent test would lead to a different result than before. *Id.* Notably, in *Johnson,* we concluded that a legally invalid deed did not sever a joint tenancy, stating that "the intent-based test must normally, if not in every instance, be derived from an instrument that is legally effective to carry out the intent." 739 N.W.2d at 501.

Examining the documents here, there is no dispute that Schardein made a legally valid conveyance of her interest in the Lake Lot to a separate legal entity—the Trust. The main text of the deed conveyed "all of [Schardein's] undivided interest in and to" the Lake lot. The boilerplate language warranting that Schardein held the property in fee simple would not trump the actual words of conveyance. Given that conveyance, it makes no sense to suggest that the Trust could now hold a property as a joint tenant with right of survivorship. The Trust is not a natural person and doesn't "die." In fact, it outlived Schardein. Moreover, the Trust assets, which included Schardein's interest in the Lake Lot, had to be distributed on her death in accordance with her will, in which Sickels wasn't named.

In sum, there is no way to accept both of the following propositions: (1) that the Trust took over Schardein's interest in the Lake Lot, which is what the 2018 Trust and the 2018 warranty deed say; and (2) that the joint tenancy with rights of survivorship continued after 2018. In that event, the text of the documents must prevail. *See id.* at 498–99 ("[I]ntent must be derived from an instrument . . . .").

As the court of appeals aptly put it, "When the legally effective instruments corroborate Schardein's intent that someone other than Sickels receive her proportional interest in the property upon her death, how can a right of survivorship continue? The answer is simple—it cannot." We agree.[2]

Other courts have recognized that a conveyance by an individual to their revocable trust terminates a prior joint tenancy with rights of survivorship. *Wood v. Pavlin*, 467 S.W.3d 323, 324–26 (Mo. Ct. App. 2015) (finding that one joint tenant's transfer of his undivided interest to his revocable trust five months before his death severed the joint tenancy, recognizing the "national norm" of the ability to unilaterally sever and the absence of restraint on alienation); *Smolen v. Smolen*, 956 P.2d 128, 130 (Nev. 1998) (per curiam) ("Martin [Smolen] severed the joint tenancy when he conveyed his interest in the Las Vegas residence to the new trust. This transfer not only severed the joint tenancy but also created

---

[2]Sickels makes much of the fact that the 2018 warranty deed recited that "[t]his deed is given for estate planning purposes." Sickels views this form language as a disclaimer of any legal effect. We are not persuaded. The operative language in the deed conveys all of Schardein's interest in the Lake Lot to a new legal entity, i.e., the Trust. And the "estate plan[]," as set forth in the Trust, was for that interest to be distributed on her death in accordance with her will, of which Sickels was not a beneficiary.

a tenancy in common between [the former joint tenant] and the new Martin Smolen trust."). We affirm the district court and the court of appeals on this point.

**B. What Share of the Proceeds Should Each Party Receive?** We now must decide how the proceeds should be divided. On this second issue, we believe the district court and the court of appeals committed a legal error in offsetting Schardein's original purchase price against the proceeds. In 2014, Schardein made an informed decision to buy the Lake Lot for $85,000 and put it in a joint tenancy with Sickels. With a career's worth of experience in real estate, Schardein understood what she was doing. And, this was only a fraction, not a large percentage, of Schardein's wealth. Further, there was a justification for what Schardein did: Sickels was providing assistance and companionship to her.

While our caselaw allows for equitable adjustments based on relative contributions by the parties during the joint tenancy, the district court took the unprecedented step of undoing the joint tenancy and putting the parties back to where they were before 2014. The district court did so even though it did not question the nature and purpose of the 2014 transaction.[3]

Under our precedents, when property is partitioned by sale, a party may seek reimbursement for improvements they made to the extent those improvements have enhanced the value of the property. *Mahon v. Mahon,* 121

---

[3]As the district court put it, "Helen was quite aware of the legal consequences of such a deed from her experience as an abstractor. Helen apparently wished to take care of Dan financially for what he did for her outside of probate."

N.W.2d 103, 106 (Iowa 1963).

> The reason for the rule is that when improvements built by a cotenant enhance the value of the common estate and the cotenants are not injured in any way, or hindered from having partition, they should not be permitted to take advantage of the improvements, to which they contributed nothing.

*Id.*

In a 2008 case, *Coyle v. Kujaczynski*, 759 N.W.2d 637, 642 (Iowa Ct. App. 2008), the court of appeals summarized our law well:

> In a partition action, proceeds from the sale of the property are to be divided according to the interest each party held in the property prior to the sale. *See* Iowa R. Civ. P. 1.1209. Here, the property was held in joint tenancy with rights of survivorship. Thus, each party held an undivided interest in the whole property that, upon severance of the joint tenancy, became an interest in one-half of the property. *In re Estate of Bates*, 492 N.W.2d 704, 706–07 (Iowa Ct. App. 1992). This does not mean, however, that each party is simply entitled to one-half of the proceeds after deducting the costs of the sale. It has long been held that parties may be entitled to reimbursement for things such as value-enhancing improvements or indebtedness. *See Mahon v. Mahon*, 254 Iowa 1349, 1352, 121 N.W.2d 103, 106 (1963) (improvements); *Creger v. Fenimore*, 216 Iowa 273, 276, 249 N.W. 147, 148 (1933) (note secured by mortgage). Consequently, the law of partition, as well as general equitable principles, provides for reimbursement of the contributions of the parties and an equal division of any remaining proceeds.

Thus, if the property had been held in joint tenancy with rights of survivorship, the partitioning court starts with an equal division of proceeds. *Id.* There is then the potential for adjustments to be made based on value-enhancing contributions that occurred during the joint tenancy. *Id. Coyle* furnishes two examples of such contributions: (1) improvements made during the tenancy and (2) debt payments made during the tenancy. *Id.*; *see also Mahon*, 121 N.W.2d at 106; *Creger*, 249 N.W. at 148.

Although *Coyle* was decided under Iowa Rule of Civil Procedure 1.1209, we see no indication that the enactment of Iowa Code chapter 651 in 2018 changed this law. *See* 2018 Iowa Acts ch. 1108 (codified at Iowa Code ch. 651 (2019)). Section 651.2 now states rather blandly, "Property shall be partitioned by equitable proceedings. A property subject to partition shall be partitioned by sale and the proceeds from the sale divided by the owners of the property . . . ." Iowa Code § 651.2. Section 651.12 adds that "[t]he court shall file an initial decree establishing the shares and interests of all owners in a property subject to a partition petition." *Id.* § 651.12. Perhaps more pointedly, section 651.21 makes clear that the sale does not affect the parties' prior interests in the property: "After a property has been partitioned by sale, a party . . . shall have the same rights or interests in the proceeds as the party had in the property sold, subject to a prior charge for costs."[4] *Id.* § 651.21(1). We see nothing in these statutes that would dislodge prior caselaw as set forth in *Coyle* and elsewhere.

And that caselaw is clear. In *Frederick v. Shorman,* a mother and her son held a joint tenancy in property with right of survivorship. 147 N.W.2d 478, 481 (Iowa 1966). The mother had paid the entire purchase price and all the expenses of upkeep. *Id.* A judgment creditor of the son sought to attach the property. *Id.* The mother obtained an injunction from the trial court on the ground that the son had no interest in the property. *Id.* We reversed. *Id.* at 485. We explained that the mother was unable to overcome several presumptions, including that

---

[4]"Costs" as used in chapter 651 appears to refer to costs of the partition action. *See* Iowa Code § 651.22.

"[w]hen a deed sufficient to vest title is executed and delivered, the law raises the presumption of an intent to pass the title in accordance with its terms and the burden rests on the one who avers a different intention." *Id.* at 482. Likewise, the mother needed to overcome "a presumption that joint tenants hold in equal shares." *Id.* We noted, "The intent sought to be reached is plaintiff's intent existing at the time she caused the deed to be executed." *Id.* at 483.

As we elaborated in another case,

> The proportional interest is the joint tenant's interest which comes from the creation of the joint tenancy which necessarily occurs before the death of another joint tenant. The accretive interest, on the other hand, is the interest the survivor receives at the death of a joint tenant. Thus, where two joint tenants have an interest in property and one joint tenant dies, the surviving joint tenant has a one-half proportional interest and a one-half accretive interest.

*In re Est. of Kirk*, 591 N.W.2d 630, 634–35 (Iowa 1999) (citations omitted).

In short, creation of a two-party joint tenancy with rights of survivorship leads to a presumption that each of the parties owns a one-half proportional interest in the property.[5] There is no evidence in the record that Schardein intended a different arrangement in 2014. In fact, the record indicates that Schardein was especially well-informed on real property transactions. The district court didn't raise any concern that the 2014 transaction was something other than it appeared to be. Subtracting the original purchase price from the proceeds isn't the same as making an equitable adjustment based on what

---

[5]At common law, this was one of the four "unities"—i.e., unity of interest—and it was an absolute requirement for a joint tenancy with right of survivorship. *Johnson*, 739 N.W.2d at 496. As noted, we have moved away from the four unities standard as an absolute requirement. *Id.* at 496–97. But it is still a presumption.

happened during the joint tenancy; it is tantamount to unwinding the original underlying transaction, something which chapter 651 does not authorize a court to do. *See generally* Iowa Code § 651. A court may believe that restoring Schardein's successor and Sickels to their pre-joint tenancy situation is fair and reasonable, but that ship sailed in 2014 when the joint tenancy with rights of survivorship was established.

The court of appeals cited *Schroeder v. Todd* for the proposition that "[p]roof of unequal contribution to purchase price of realty by grantees, in conveyance to purchasers of tenancy in common, overcomes presumption that they take equal shares, and raises presumption they intended to share in proportion to amounts contributed by each." 86 N.W.2d 101, 104 (Iowa 1957). In that case, five related individuals acquired property as tenants *in common*, with one brother paying a third of the price, another brother paying a third of the price, and the three children of a deceased brother also paying a third. *Id.* at 103–04. We concluded that each of the three children of the deceased brother had only a one-ninth, as opposed to a one-fifth, interest in the property. *Id.* at 104.

The present case is different because the property was acquired as a joint tenancy with rights of survivorship, not as a tenancy in common. Accordingly, *Schroeder* doesn't apply. Moreover, in *Schroeder*, the one-third, one-third, one-ninth, one-ninth, one-ninth division reflected the parties' *original* intent as of the time the property was acquired. *Id.* That is not the situation here. Schardein's and Sickels's concept was not for her to get 100% of the property and for him to

get nothing. In effect, the trial court was making what it believed to be an equitable adjustment based on who paid the purchase price, rather than implementing the parties' legally binding plan. That is not permissible.

Consider the following hypothetical if the Trust's argument were correct here: Person *A* could buy a property and make Person *B* her joint tenant with right of survivorship in return for services rendered. After four and a half years of Person *B*'s services, Person *A* could back out of the deal, ask for a severance and partition, reclaim the purchase price, and leave Person *B* with nothing. In fact, that isn't purely a hypothetical, but an approximation of the facts of this case.

Our views are supported by out-of-state authority. A recent Wyoming Supreme Court decision in a partition action is illustrative. *See Gallagher v. Townsend*, 443 P.3d 847 (Wyo. 2019). Two parties had cohabitated and owned the property as joint tenants with rights of survivorship. *Id.* at 849. The court held that upon partition, the parties were entitled to equal shares and the fact that one of the parties had paid the entire purchase price was "no longer relevant." *Id.* at 854. "The district court was, however, authorized to make a final accounting consistent with a joint tenant's right to proportionate reimbursement for necessary expenditures made in protection of the joint property." *Id.*; *see also Milian v. De Leon*, 226 Cal. Rptr. 831, 836 (Ct. App. 1986) ("Nor indeed have we discovered a single case in which a true joint tenancy was found and yet an accounting and contribution was ordered because of disproportionate contributions by the parties to the original purchase price."); *Christen v.*

*Christen*, 38 S.W.3d 488, 492 (Mo. Ct. App. 2001) ("[T]his unequal contribution [toward the purchase price] is irrelevant in determining the joint tenants' respective shares when there is a family relationship between the tenants or when there is evidence of donative intent."); *Rausch v. Hogan*, 28 P.3d 460, 465 (Mont. 2001) ("There is a rebuttable presumption of equal shares where land is held in joint tenancy. When two people own real property as joint tenants with the right of survivorship, each owns equal shares in the property. Where one party seeks to establish that the parties intended an unequal division, the intent to confer unequal contributions must be demonstrated. Because Hogan sought the unequal division, it was incumbent upon him to affirmatively demonstrate that he and Rausch intended that their joint tenancy be unequal. We find he failed to carry this burden.") (citations omitted); *McCarthy v. Lippitt*, 781 N.E.2d 1023, 1033 (Ohio Ct. App. 2002) ("The court's finding regarding appellants' original purchase price, though, does not affect appellants' proportional interest in the property. . . . Once a proportional or fractional interest in property is established, that proportion does not change merely because other cotenants may have paid more for their interests or may have invested more in improvements on the entire property.").[6]

While the district court and the court of appeals erred in offsetting Schardein's original purchase price against the sale proceeds, the court was

---

[6]To the contrary is a 2012 decision of the Mississippi Court of Appeals. *See Jones v. Graphia*, 95 So. 3d 751 (Miss. Ct. App. 2012). This was a 6–4 decision. *See id.* at 755. The majority opinion contains relatively little analysis and we are more persuaded by the dissents. *See id.* at 755–756 (Carlton, J., dissenting); *id.* at 756–757 (Maxwell, J., dissenting).

allowed to make equitable adjustments based on expenses incurred during the joint tenancy. The Trust bore the burden of proof on this issue. *See Mahon,* 121 N.W.2d at 108 ("Of course the burden rested on plaintiff to prove the amount by which the improvements placed upon the land by her enhanced its value at the time of trial."). The record indicates that Schardein or her successor, the Trust, paid homeowners' association dues for the Lake Lot of around $600 to $700 annually and property taxes of approximately $976 per year.[7] Six years of association dues and property taxes come to approximately $9,756. Sickels did not claim at trial that Schardein's or the Trust's payment of these expenses was intended as a gift or as compensation to him. Deducting $9,756 from the net sale proceeds of $73,312.54 leaves a balance of $63,556.54. This amount should be divided equally between the parties, which means that the Trust would receive $41,534.27 of the net proceeds ($31,778.27 plus $9,756) and Sickels would receive $31,778.27.[8]

**V. Conclusion.**

For the foregoing reasons, we affirm in part and reverse in part both the judgment of the district court and the decision of the court of appeals. We remand this case to the district court for further proceedings and entry of a revised decree in accordance with this opinion.

---

[7]The record indicates that both parties paid for insurance on the property and Schardein paid for utilities and mowing. The Trust failed to offer any proof of what the utilities and mowing costs would have been for this lot.

[8]Nothing we say herein is intended to affect a district court's authority over disposition of property in a dissolution of marriage case. *See* Iowa Code § 598.21. Needless to say, this is not such a case.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except May, J., who takes no part.